UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JOVITA VIERRIA,

        Plaintiff,

   v.

CALIFORNIA HIGHWAY PATROL, a
public entity, TIM CASTLE, an
individual, STATE COMPENSATION
INSURANCE FUND, a quasi-
governmental entity,
CHRISTOPHER J. DEVEREUX, an
individual,

        Defendants.

NO. CIV. 09-305 FCD/GGH

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendants', California

Highway Patrol ("CHP"), Tim Castle ("Castle"), State Compensation

Insurance Fund ("SCIF"), and Christopher J. Devereux

("Devereux"), motions to dismiss plaintiff Jovita Vierria's

("plaintiff" or "Vierria") complaint, pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Vierria opposes the motions.

    Vierria's complaint alleges eleven causes of action:

(1) violation of the Racketeering Influenced and Corrupt

1

Organization Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, against all defendants; (2) violation of the right to equal protection, 42 U.S.C. § 1983 ("Section 1983"), against CHP and Castle; (3) violation of the right to freedom of speech, Section 1983 and 42 U.S.C. § 1985, against Castle and Devereux; (4) taking of property, Section 1983, against all defendants; (5) violation of the right to privacy, Section 1983, against all defendants; (6) violation of the Public Safety Officers' Bill of Rights ("POBR"), Cal. Gov't Code §§ 3303 *et seq.*, against all defendants; (7) Retaliation for Whistleblowing, Cal. Lab. Code § 1102.5, against CHP; (8) discrimination, retaliation, and harassment in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*, against CHP; (9) failure to take reasonable steps to prevent discrimination and harassment in the workplace in violation of FEHA, Cal. Gov't Code § 12900, *et seq.*, against CHP; (10) abuse of process, against all defendants; and (11) intentional infliction of emotional distress ("IIED"), against all defendants.

Collectively, defendants move to dismiss plaintiff's claims on the following bases: (1) the RICO claim on the grounds plaintiff fails to allege sufficient facts to establish (a) defendants engaged in any predicate acts of racketeering, (b) a pattern of racketeering activity, or (c) a cognizable injury to plaintiff's business or property; (2) the free speech claim on the basis that defendants' alleged conduct would have no tendency to chill Vierria's speech; (3) the takings claim on the ground it is barred by the state remedies doctrine; (4) the privacy claim because Vierria does not allege a federally

2

protected right; (5) the POBR claim because Vierria does not allege facts to establish she is a "public safety officer;" (6) the abuse of process claim on the basis it is preempted by the Workers' Compensation Act's ("WCA") exclusive remedy provision; and (7) the IIED claim on the ground defendants' alleged conduct was not extreme or outrageous, and/or the IIED claim is preempted by the exclusive remedy provision of the WCA.

Certain defendants also make specific arguments with respect to particular claims asserted against them. CHP and Castle move to dismiss all of Vierria's claims on the basis of sovereign immunity. Castle alternatively moves to dismiss plaintiff's RICO claim, as directed against him, on the ground Vierria has not pled sufficient facts to establish he was part of a RICO "enterprise." Further, SCIF and Devereux move to dismiss plaintiff's Section 1983 claims against them on the ground they were not acting under color of law. Devereux also moves to dismiss the Section 1983 claims and the state law claims against him on the basis that he is entitled to absolute or qualified immunity. Finally, as to plaintiff's takings claim, SCIF and Devereux move to dismiss that claim on the ground Vierria has not alleged a plausible connection between SCIF/Devereux's actions and Vierria's resignation.

In her opposition, Vierria concedes that CHP and Castle, in his official capacity, are immune from liability, pursuant to the Eleventh Amendment, from the RICO claim and all state law claims. Vierria, however, seeks leave to amend her complaint to allege said claims against Castle as an individual. Further, Vierria concedes her privacy claim does not plead a valid federally

3

protected right and, thus, seeks leave to amend as to this claim as well.

The court addresses below each of the above bases for dismissal.  For the reasons set forth below, defendants' motions to dismiss are GRANTED in part and DENIED in part.[1]

BACKGROUND[2]

In 1993, Vierria began work for CHP as an Associate Governmental Analyst in the Disability and Retirement Section ("DRS").  (Compl. ¶ 16, filed February 3, 2009.)  The DRS is the department within CHP that manages employee injury and illness cases.  (Compl. ¶ 18.)  SCIF, established under the California Constitution, provides workers' compensation benefits to CHP employees. (Compl. ¶¶ 28, 33.)

During the 1990s, CHP began receiving an increased number of disability claims associated with retiring CHP Assistant and Deputy Chiefs.  (Compl. ¶ 19.)  A disabilities claim upon retirement substantially increases the retirement benefits of a CHP employee.  (Id.)  By 2004, the practice had "snow-balled" and more than 80% of retiring CHP Assistant and Deputy Chiefs claimed a disability upon retirement.  (Id.)

Employees that worked for CHP, and DRS, became concerned that the increased disabilities claims appeared to be "fraudulent institutionalized theft of State funds."  (Compl. ¶ 20.)  In or around 2004, the Sacramento Bee dubbed the "large and unjustified

---

[1]     Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs.  E.D. Cal. L.R. 78-230(h).

[2]     The facts are derived from the allegations of the complaint.

4

1  payouts" as the "Chief's Disease." (Compl. ¶¶ 21, 35.)

2  Subsequently, a Grand Jury investigation began. (Compl. ¶ 21.)

3  However, instead of investigating the accuracy of the allegations

4  concerning "Chief's Disease," CHP began a "witch hunt" to

5  determine which, if any, of its employees had leaked the

6  information to the Sacramento Bee. (Compl. ¶ 22.)

7      Shortly thereafter, SCIF became the subject of a criminal

8  investigation and a state audit to address concerns of favoritism

9  and conflicts of interest. (Compl. ¶ 50.) Vierria alleges that

10  Devereux, an attorney of record for CHP and a Board of Trustee

11  Member at SCIF, engaged in the theft of State funds by

12  contracting with companies with whom he had a personal financial

13  interest. (Compl. ¶ 40.) Castle, a former employee of SCIF, is

14  the Staff Service Manager of the DRS at CHP. (Compl. ¶¶ 24-25.)

15  Vierria alleges Castle used his knowledge and relationships

16  obtained at SCIF to gain advantageous settlements for retiring

17  Assistant and Deputy Chiefs claiming disabilities upon

18  retirement. (_Id._) Further, Castle would force out CHP employees

19  that questioned the fraudulent practices between DRS and SCIF and

20  replace those employees with former SCIF employees loyal to

21  Castle. (Compl. ¶¶ 26, 39.) Also, Castle directed questionable

22  disability claims to former SCIF employees to keep unwarranted

23  payouts quiet. (Compl. ¶ 26.) In March 2004, Steve Poizner, the

24  California Insurance Commissioner, ordered an audit of SCIF.

25  (Compl. ¶ 50.) SCIF was also the subject of a criminal

26  investigation and a legislative hearing. (_Id._)

27      In California, CHP has merged with the California State

28  Police. (Compl. ¶ 17.) The merger increased CHP's

5

responsibilities to include investigation of alleged
misappropriated state funds and conflicts of interest at SCIF.
(Compl. ¶ 32.)  Simultaneously, SCIF determines and authorizes
the disability retirements for CHP employees resulting in
numerous "unjustified payouts." (Compl. ¶ 33.)  Vierria alleges
CHP engaged in a criminal conspiracy with SCIF to defraud the
State of California of taxpayer funds and then concealed the
nature and extent of their criminal activities. (Compl. ¶ 39.)
In exchange, SCIF engaged in a pattern of approving CHP Assistant
and Deputy Chiefs' unwarranted and excessive disability payments.
(Compl. ¶¶ 41, 88.)

    Vierria further alleges SCIF and CHP conspired to harass,
humiliate, and bring false or exaggerated disciplinary charges
against any CHP employee who protested the fraudulent practice.
(Compl. ¶ 42.)  Further, CHP and Castle would attempt to force
non-compliant employees into the worker's compensation system in
order to expose them to an investigation by SCIF. (Compl. ¶¶ 42,
67.)  Once in the workers' compensation system, SCIF subjected
"problem employees" to excessive and prolonged investigations,
and depositions into private matters unrelated to the
disabilities claims. (Compl. ¶ 42.)

    As part of her job responsibilities, Vierria referred
several "Chief's Disease" workers' compensation cases to CHP's
Internal Affairs Fraud Unit for investigation. (Compl. ¶ 55.)
Thereafter, Vierria became known as a "problem employee" for
contesting and opposing a Deputy Chief's disability claim. (Id.)

    On or about December 28, 2006, a coworker filed a complaint
against Vierria, alleging Vierria was planning to leak

6

information to the Sacramento Bee about some workers'
compensation claims. (Compl. ¶ 56.)  In January 2007, CHP's
Office of Internal Affairs ("OIA") began an investigation into
whether Vierria was "thinking about" leaking information to the
Sacramento Bee. (Compl. ¶ 57.)

On January 26, 2007, the OIA subjected Vierria to a four and
one half hour interrogation. (Compl. ¶ 59.)  During the
interrogation, the OIA repeatedly threatened Vierria with
disciplinary action, including dismissal, and "grilled [her]
relentlessly about whether she leaked information." (Id.)  The
investigators also interrogated Vierria about unrelated personal
matters, including her religious practices, in order to "force
Vierria to confess to betraying CHP." (Id.)

In addition to the interrogation, CHP interviewed Vierria's
coworkers, managers, and husband. (Compl. ¶ 62.)  Again, CHP
inquired about Vierria's personal matters such as sexual
relationships and religious practices. (Id.)  Once again, these
inquiries were unrelated to whether Vierria was "thinking about"
leaking information to the Sacramento Bee. (Id.)  Vierria
alleges the interrogation and scrutiny CHP forced her to endure
was intended to scare Vierria and other DRS employees from
reporting specific cases of "Chief's Disease" misconduct.
(Compl. ¶ 61.)

On May 15, 2007, the OIA issued a report of its
investigation which concluded that Vierria did not release
confidential information to the Sacramento Bee. (Compl. ¶¶ 70,
71.)  However, the report included four unrelated allegations of
improper conduct and recommenced that adverse action against

7

Vierria was appropriate.  (Compl. ¶ 72.)

In July 2007, Vierria filed a workers' compensation claim for Post-Traumatic Stress Disorder and "compassion fatigue." (Compl. ¶¶ 53, 65.)  Devereux, a senior workers' compensation attorney at SCIF, handled Vierria's claim.  (Compl. ¶¶ 34, 67.) Although four physicians agreed that Vierria's physical and emotional symptoms were caused by work-related stressors and approved three months leave, Devereux subjected Vierria to a second phase of a "sham investigation" to force Vierria into confessing to being the Sacramento Bee informant.  (Compl. ¶¶ 65, 68.)  Under direction of CHP and Castle, Devereux subjected Vierria to six days of "relentless" depositions.  (Compl. ¶¶ 67-68.)  During the depositions, Devereux attempted to coerce Vierria into "admitting she had worked with another person to leak information" by "grilling" her about a personal relationship with a former CHP Captain.  (Compl. ¶ 68.)  Further, Devereux used his authority under SCIF to hire two investigating services to investigate Vierria's workplace injury claim.  (Compl. ¶ 69.) The investigators asked questions of witnesses that went beyond Vierria's claim to further the "sham investigation."[3]  (Id.)

On September 5, 2007, CHP retaliated against Vierria by serving her with a notice of adverse action, suspending her for ten days and transferring her out of DRS.  (Compl. ¶¶ 73, 75.) CHP justified the adverse action by citing the accusation that Vierria was "thinking about" leaking information and the OIA

---

[3]   Vierria suggests the investigators asked witnesses questions about Vierria's sexual and family relationships, friendships, religion, California property ownership, bankruptcies, liens and judgments, and pending divorce.

report.  (Compl. ¶ 75.)  Further, CHP intimidated and humiliated Vierria by "poisoning her new work environment and continuing the "on-going stigma of [Vierria] as a traitor" by serving Vierria an amended notice of adverse action on January 30, 2008. (Compl. ¶ 76.)

In December 2008, the State Personnel Board overturned the decision of CHP to transfer and suspend Vierria.  (Compl. ¶ 77.) However, Vierria resigned in the wake of the never-ending investigation and harassment, alleging a constructive termination.  (<u>Id.</u>)

**STANDARD**

**I.  Motion to Dismiss**

On a motion to dismiss, the allegations of the complaint must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).  The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged.  <u>See</u> <u>id.</u>

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  <u>Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th

9

Cir. 1986). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, --- U.S. ---, 2009 U.S. LEXIS 3472, at *29 (May, 18, 2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp.2d 1035, 1042 (C.D. Cal. 1998).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, --- U.S. ---, 2009 U.S. LEXIS 3472, at *29 (May, 18, 2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. When there are well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

## II. Motion to Amend

Federal Rules of Civil Procedure 15(a) states that "[t]he court should freely give leave when justice so requires." "Leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Martinez v. Newport Beach, 125 F. 3d 777, 785 (9th Cir. 1997).

**ANALYSIS**

**I.   RICO Claim (All Defendants)**

Vierria alleges defendants engaged in a pattern of
racketeering activity in violation of 18 U.S.C. §§ 1962(c), (d).
Section 1962(c) makes it "unlawful for any person employed by or
associated with" an enterprise engaged in or affecting interstate
commerce "to conduct or participate, directly or indirectly, in
the conduct of such enterprise's affairs through a pattern of
racketeering activity."  Further, Section 1962(d) provides that
"[i]t shall be unlawful for any person to conspire to violate any
of the provisions of subsection (a), (b), or (c) of [Section
1962]."  Thus, to allege a valid RICO claim, plaintiff must
allege that defendants engaged in, or conspired to engage in:
(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of
racketeering activity, (5) that proximately caused (6) damages to
plaintiff.  See Sigmond v. Brown, 828 F.2d 8, 8 (9th Cir. 1987);
Sedima v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).

Vierria alleges defendants engaged in, or conspired to
engage in, a pattern of prohibited racketeering activities
including "witness, victim or informant tampering" (18 U.S.C.
§ 1512(b)), "theft or embezzlement from [an] employee benefit
plan" (18 U.S.C. § 644), and "retaliation" for providing a law
enforcement officer truthful information relating to the
commission or possible commission of a federal crime (18 U.S.C.
§ 1513(e), (f)).  Defendants argue, *inter alia*, (1) CHP and
Castle are immune from the RICO claim under the doctrine of
sovereign immunity, and Vierria fails to allege sufficient facts

11

to establish (2) Castle was a part of a RICO enterprise,

(3) defendants engaged in any predicate acts of racketeering,

(4) a pattern of racketeering activity, or (5) a cognizable

injury to business or property.

### A.    State Sovereign Immunity (CHP & Castle)

CHP and Castle argue that the doctrine of sovereign immunity

bars Vierria from holding CHP and Castle, in his official

capacity, liable under RICO.  In her opposition, plaintiff

correctly concedes that pursuant to the Eleventh Amendment, CHP

and Castle, in his official capacity, may not be held liable

under RICO.  <u>See</u> <u>Alden v. Maine</u>, 527 U.S. 706, 727 (1999);

<u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100-01

(1984); <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Thus,

CHP's motion to dismiss this claim on the basis of Eleventh

Amendment immunity is GRANTED with prejudice.  Likewise, Castle's

motion to dismiss this claim, as asserted against him in his

official capacity, is GRANTED on the basis of Eleventh Amendment

immunity as well.

However, the court grants Castle's motion without prejudice.

Because the court finds no prejudice to defendants, nor undue

delay by plaintiff in seeking leave, plaintiff is granted leave

to amend her complaint to allege a RICO claim against Castle in

his individual capacity.

### B.    Enterprise

Castle claims that Vierria has failed to allege sufficient

facts to establish that he was involved in a RICO enterprise.

The RICO statute defines an "enterprise" as including (1) "any

individual, partnership, corporation, association, or other legal

entity," or (2) "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An associate-in-fact enterprise is a group of persons "associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). To establish the existence of an associate-in-fact enterprise, a plaintiff must prove both "evidence of an ongoing organization, formal or informal," and "evidence that various associates function as a continuing unit." Id.

Vierria sufficiently alleges Castle, SCIF, and Devereux have associated for "a common purpose of engaging in a course of conduct." See id. Plaintiff alleges, defendants "engaged in a criminal conspiracy to defraud the State of California of taxpayer funds and, thereafter, conceal the nature and extent of their criminal activities." (Compl. ¶ 39.) Vierria alleges "in order to conceal the nature and extent of the theft of state funds, SCIF engaged in a pattern of approving CHP Assistant and Deputy Chiefs by authorizing unwarranted and excessive disability payments." (Compl. ¶ 41.) Vierria further alleges, SCIF and CHP conspired to engage in "retaliatory acts" seeking to "harass, humiliate, and wrongfully discharge any employee who protested the fraudulent practices" by "bringing false or exaggerated disciplinary charges against CHP employees that would not cooperate in the fraud." (Compl. ¶ 42.)

Vierria sufficiently alleges Castle was involved in a formal, or informal, "ongoing organization." See Turkette, 452 U.S. at 583. An ongoing organization is "a vehicle for the commission of two or more predicate crimes." Odom v. Microsoft

<u>Corp.</u>, 486 F.3d 541, 552 (9th Cir. 2007) (internal quotations and citations omitted).  Plaintiff alleges, Castle, SCIF and Devereux formed a vehicle for the commission of two or more predicate crimes including "witness tampering," "theft of state funds," and "retaliation." (Compl. ¶¶ 83-86.)  More specifically, Vierria alleges Castle, a former employee of SCIF, used family members and knowledge from his previous SCIF employment "to gain advantageous settlements for retiring Assistant and Deputy Chiefs claiming disabilities upon retirement." (Compl. ¶ 25.)  Further, Vierria alleges "Castle directed that questionable disability claims be handled by former SCIF employees so that they could keep the unwarranted disability payouts quiet." (Compl. ¶ 26.)  Also, Vierria alleges that "under the direction of CHP and Castle," SCIF and Devereux subjected Vierria to "a second phase of sham investigations" where Devereux "grilled [Vierria] about her personal relationship[s]," and "attempted to coerce [Vierria] into admitting that she . . . leak[ed] information." (Compl. ¶¶ 67-68.)  Finally, Vierria alleges Devereux, "with the complicity of Castle," hired two investigating services who asked questions of witnesses "that went far beyond [Vierria's] workman's compensation claim, and delved into . . . questions regarding [Vierria's] . . . sexual relationships and family relationships; friendships; her religion; California property ownership; bankruptcies; liens and judgments; and her pending divorce." (Compl. ¶ 69.)

Vierria also alleges facts that, if proved, provide sufficient "evidence that the various associates function as a continuing unit." See <u>Turkette</u>, 452 U.S. at 583.  Rather than

14

requiring that every member be involved in each of the underlying racketeering, or predicate acts, the continuity requirement focuses on "whether the associates' behavior was 'ongoing' rather than an isolated activity." Odom, 486 F.3d at 553 (citing United States v. Patrick, 248 F.3d 11, 19 (1st Cir. 2001)).  First, Vierria's allegations of misconduct cover a span of at least ten years rather than an isolated activity. (Compl. ¶ 19.) Plaintiff also alleges the predicate acts were not isolated activities because defendants' actions were part of an ongoing "pattern of similar acts, which [were] committed against other employees . . . who they believed could have leaked damaging information . . . and did not assist in the cover up." (Compl. ¶88.)  Thus, Castle's motion to dismiss on the ground that Vierria has not alleged facts to establish a RICO enterprise is DENIED.

### C.  Racketeering Activities

Vierria alleges defendants engaged in a pattern of racketeering activity including "theft or embezzlement of an employee benefit plan," "witness tampering," and "retaliation." (Compl. ¶¶ 83-86.)  "Racketeering activity" is defined, *inter alia*, by specific reference to predicate acts including "any act which is indictable under . . . section 664 (relating to embezzlement from pension and welfare funds), . . . section 1512 (relating to tampering with a witness, victim, or an informant), . . . [and] section 1513 (relating to retaliating against a witness, victim, or informant)."  18 U.S.C. § 1961(1)(B). Defendants argue that Vierria's RICO claim should be dismissed because Vierria fails to plead sufficient facts to show

15

1  defendants engaged in any of the alleged predicate acts of
2  racketeering.

3         **1.**    **Embezzlement From an Employee Benefit Plan**

4        Defendants argue Vierria fails to allege a RICO claim based
5  on embezzlement and/or theft from an employee benefit plan
6  because the California Public Employee Retirement Plan
7  ("CALPERS") is a government plan expressly excluded from the
8  Employee Retirement Income Security Act of 1974 ("ERISA").  Title
9  18 U.S.C. § 664 establishes that "[a]ny person who embezzles,
10 steals, or unlawfully and willfully abstracts or converts to his
11 own use or to the use of another, any of the moneys, funds, . . .
12 or other assets of any employee . . . benefit plan . . . shall be
13 fined under this title, or imprisoned not more than five years,
14 or both."  18 U.S.C. § 664.  Further, Section 664 defines an
15 employee benefit plan as "any employee benefit plan subject to
16 any provision of title I of the Employee Retirement Income
17 Security Act of 1974."  Id.

18       Vierria alleges defendants engaged in activity resulting in
19 the theft or embezzlement of state employee retirement benefits.
20 (Compl. ¶ 84.)  However, the only benefit plan referenced in
21 Vierria's complaint is CALPERS.  (Compl. ¶¶ 20, 84.)  Vierria
22 does not dispute CALPERS is a government plan as referenced in
23 ERISA.  Instead, she contends, pursuant to 29 U.S.C. § 1003(b),
24 that ERISA only excludes governmental plans in one *subchapter* of
25 its jurisdiction and, therefore, the plan meets the "employee
26 benefit plan" definition under RICO because CALPERS is subject to
27
28

the remaining provisions of ERISA.[4]   However, this argument is
unpersuasive because the subchapter referenced in Section 1003(b)
sets forth what plans are covered by ERISA.   See 29 U.S.C.
§ 1003(b).   Thus, because Section 1003(b) expressly *exempts*
government plans such as CALPERS from the coverage of the title,
CALPERS is not subject to any other provisions of ERISA.   See id.
Further, the legislative history and relevant caselaw establishes
that Title I of ERISA specifically excludes from its coverage *any*
employee benefit plan that is a governmental plan, such as
CALPERS.   See Pub.L 93-406, Sept. 2, 1974, 88 Stat. 839; See also
Gulandi v. Adams, 385 F.3d 236, 242 (2d Cir. 2004).

   Notwithstanding Vierria's allegations regarding theft of
"state funds," the alleged facts do not constitute a violation
under Section 664 because ERISA specifically excludes government
plans such as CALPERS from its provisions.   See id.   Thus,
defendants' motion to dismiss on the basis that the alleged facts
do not constitute a violation under 18 U.S.C. § 664 is GRANTED
with prejudice.

### 2.   Witness, Victim, or Informant Tampering

   Defendants argue Vierria fails to allege a RICO claim based
on "witness tampering" because she does not allege tampering of
an "official proceeding."   Witness tampering is actionable if
someone "knowingly uses intimidation, threatens, or corruptly
persuades another person, or attempts to do so, or engages in
misleading conduct towards another person, with the intent to –

---

   [4]   29 U.S.C. § 1003(b) states, "The provisions of this
**_subchapter_** shall not apply to any employee benefit plan if – (1)
such plan is a governmental plan. . ." (emphasis added)

17

(1) influence, delay, or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(b). An "official proceeding" is defined as, *inter alia*, "a proceeding involving the business of insurance whose activities affect interstate commerce before any regulatory official . . . or examiner . . . to examine the affairs of a person engaged in the business of insurance whose activities affect interstate commerce." 18 U.S.C. §1515(a)(1)(D). Thus, to allege a valid Section 1512(b) claim with respect to the business of insurance, a plaintiff must allege facts establishing a (1) proceeding involving the business of insurance, (2) whose activities affect interstate commerce, (3) before any regulatory official or examiner, (4) to examine the affairs of a person engaged in the business of insurance. Id.

Here, plaintiff alleges "SCIF is a publicly funded enterprise, . . . ensuring that all California businesses may obtain . . . insurance coverage." (Compl. ¶ 28.) Further, the court may reasonably infer from the alleged facts that SCIF's conduct affects interstate commerce because plaintiff alleges "SCIF competes in the private market with other insurers." (Compl. ¶ 29.) Further, Vierria alleges SCIF was subject to "a criminal investigation," a "legislative hearing," and subject to an audit ordered by a regulatory official, the California Insurance Commissioner, to examine "conflicts of interests and favoritism." (Compl. ¶ 50.)

Defendants argue, nonetheless, that Vierria's claim fails because the term "official proceeding" is predicated upon the proceeding being a *federal* proceeding, citing Deck v. Engineered

Laminantes, 349 F.3d 1253, 1257 (10th Cir. 2003).  However, Deck is unpersuasive for several reasons:  First, it is not binding authority on this court.  Second, it is factually distinguishable from this case.  In Deck, the court did not analyze the different contexts of "official proceedings" listed in Section 1515(a)(1).  Rather, the court simply asserted baldly that *all* official proceedings, as defined in section 1515(a)(1), are limited to federal proceedings.  Id.  Deck also did not involve a proceeding regarding the business of insurance.  Id.  Examining the statute itself, while "proceedings" is defined in Section 1515(a)(1)(A)-(C) with express reference to "federal" proceedings, Section 1515(a)(1)(D) only requires that the proceeding "involv[e] the business of insurance whose activities affect interstate commerce."  18 U.S.C. 1515(a)(1)(D).  Therefore, plaintiff alleges sufficient facts to establish that defendants engaged in "witness tampering" regarding an official proceeding pursuant to Section 1512(b).

Even assuming, *arguendo*, that official proceedings were in fact limited to federal proceedings, defendants' motion would still fail because "an official proceeding need not be pending or about to be instituted at the time of the offense."  18 U.S.C. § 1512(e)(1).  Rather, the statute only requires that there be "at least a circumstantial showing . . . [that Vierria] realized a federal proceeding could be commenced in the future."  United States v. Conneaut Indus., 852 F. Supp. 116, 125 (D.R.I. 1994) (internal citations and quotations omitted).  Assuming the facts alleged as true, plaintiff makes a "circumstantial showing" that she believed a federal proceeding could be commenced in the

future.  <u>See</u> <u>id.</u>  Vierria alleges an "institutionalized theft of
State funds" between a state agency (CHP) and a business of
insurance which affects interstate commerce (SCIF).  (Compl. ¶
20.)  Further, she alleges CHP and SCIF engaged in a "criminal
conspiracy to . . . conceal the nature and extent of their
criminal activities."  (Compl. ¶ 39.)  Finally, Vierria alleges
defendants acted "with intent to intimidate, threaten, and
corruptly dissuade Vierria and other CHP employees from
testifying or informing the . . . Grand Jury
. . . of the identity of CHP high level officials who were
fraudulently making worker's (sic) compensation claims and . . .
to protect SCIF from being linked to the fraud as a form of
bribery for the SCIF thefts."  (Compl. ¶ 88.)  In order to
"preserv[e] the integrity of evidence or its availability for use
in an official proceeding," Vierria has alleged sufficient facts
to warrant protection under Section 1512(b).  <u>See</u> <u>Conneaut</u>
<u>Indus.</u>, 852 F. Supp. at 125.  Thus, defendants' motion to dismiss
on the ground that Vierria fails to sufficiently allege
defendants engaged in activity resulting in "witness, victim, or
informant tampering" regarding an official proceeding pursuant to
18 U.S.C. § 1512(b) is DENIED.

### 3.  Retaliation

Defendants argue that Vierria fails to allege a RICO claim
based on unlawful retaliation because she has not alleged that
she provided any law enforcement officer with information
relating to a federal offense.  Retaliation is actionable
pursuant 18 U.S.C. § 1513(e) if someone "knowingly, with the
intent to retaliate, takes any action harmful to any person,

including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense." 18 U.S.C. 1513(e).

As alleged in the complaint, defendants violated Section 1513(e) by retaliating against plaintiff for "providing testimony in the investigation of the improper employment practices at CHP." (Compl. ¶ 86.) Vierria alleges she provided law enforcement information regarding a federal offense when she referred information to the "CHP's Internal Affairs Fraud Unit ("IAFU")" regarding the "Chief's Disease" cases. (Compl. ¶ 55.) Further, Vierria alleges defendants "criminally conspir[ed] to defraud the State of California" through fraudulent "Chief's Disease" claims, and the subsequent "conceal[ment] [of] the nature and extent of their criminal activities." (Compl. ¶ 39.) Vierria also alleges defendants "use[d] . . . the U.S. Post Office" to perform the criminal conspiracy, including "protect[ing] SCIF from being linked to fraud as a form of bribery for the SCIF thefts," and "corruptly dissuad[ing] . . . other CHP employees from testifying or informing the District Attorney, Grand Jury, or State Legislature" of the fraud. (Compl. ¶¶ 85, 88.) These facts, if proven, establish a violation of Section 1513(e). Therefore, defendants' motion to dismiss on the basis that Vierria fails to plead facts that she was retaliated against for providing law enforcement officers information regarding the commission or possible commission of a Federal offense is DENIED.

1

### D.   Pattern of Racketeering Activity

Defendants argue that Vierria fails to allege a pattern of racketeering activity.   A "pattern" of racketeering activity requires at least two acts of racketeering activity, occurring within a 10 year period.   18 U.S.C. § 1961(5).   However, pleading two predicate acts may not be sufficient for liability because Section 1961(5) also "assumes that there is something to a RICO pattern *beyond* the number of predicate acts involved." H.J. Inc. v. Northwestern Bell Co., 492 U.S. 229, 238 (1989)(emphasis in original).   Ultimately, "to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." Id. (emphasis in original).

Vierria alleges at least two predicate acts within a 10 year period.[5]   Further, Vierria alleges the predicate acts are related insofar as both acts sought to advance "a criminal conspiracy to defraud the State . . . and . . . to conceal the nature and extent of their criminal activities." (Compl. ¶ 39.)   Finally, Vierria alleges defendants engaged in a pattern of activity, posing a threat of continued activity, because "defendants actions . . . w[ere] a part of a pattern of similar acts, which were committed against other employees . . . done with the intent to . . . protect SCIF from being linked to the fraud as a form of bribery for the SCIF thefts." (Compl. ¶ 88.)   Thus, defendants'

---

[5]   Vierria has sufficiently alleged defendants engaged in "witness tampering" (18 U.S.C. § 1512(b)) and retaliation (18 U.S.C. § 1513(e)), within a ten year period.

motion to dismiss on the ground that Vierria fails to

sufficiently allege a pattern of racketeering activity is DENIED.

### E.   Cognizable Injury to Business or Property

Defendants argue Vierria fails to allege facts to establish

a cognizable injury to her business or property.  Title 18 U.S.C.

§ 1964(c) creates a civil remedy for "[a]ny person injured in his

business or property by reason of a violation of section 1962."

18 U.S.C. § 1964(c).  To recover under RICO, a plaintiff "must

show proof of concrete financial loss." Guerrero v. Gates, 442

F.3d 697, 707 (9th Cir. 2006) (quoting Chaset v. Fleer/Skybox

Int'l, LP, 300 F.3d 1083, 1087 (9th Cir. 2002).

First, defendants contend that "personal injuries" are not

compensable under RICO. Oscar v. University Students Co-

Operative Ass'n. 965 F.2d 783, 785 (9th Cir. 1992).  While

defendants correctly state this rule of law, plaintiff does not

allege personal injuries, but rather she alleges specific damages

caused by the loss of her *property* interest in her employment.

Specifically, plaintiff alleges damages of "lost past and future

income, sick leave, annual leave and personal stress leave

benefits, loss of employment and career opportunities, and . . .

other economic loss" caused by the loss of her job.  (Compl. ¶

79.)  All of these damages are predicated upon an economic loss

stemming from the loss of her property interest in her

employment, rather than simple personal injuries.  Compare

(Compl. ¶ 79,) with (Compl. ¶ 80.)

Castle, Devereux, and SCIF further contend that they cannot

be held liable for damages from Vierria's loss of employment

because those damages are contingent upon an employer-employee

relationship, and they are not Vierria's employer.  <u>See</u> <u>Milklosy</u>
<u>v. Regents of the University of California</u>, 44 Cal. 4th 786, 901
(2008).  This argument is equally unpersuasive because
plaintiff's RICO claim is distinguishable from a wrongful
termination claim.  Rather than conduct by an employer, Vierria's
RICO claim alleges criminal conduct by individuals, devoid of any
necessary condition of employment.  Although plaintiff's alleged
damages are employment-related, her RICO damages are not
predicated on a breach of an employer-employee relationship, but
rather property damage caused by individuals engaging in criminal
activity.  Thus, defendants' motion to dismiss on the ground that
Vierria fails to allege cognizable damages to her business and/or
property resulting from violations of Section 1962 is DENIED.

**II.   Section 1983 Claims**

Vierria alleges defendants, all or in part, violated her
Constitutional rights to equal protection, freedom of speech,
property, and privacy in violation of 42 U.S.C. § 1983.  Pursuant
to Section 1983, "every person who, under color of any statute,
ordinance, regulation, custom, or usage . . . subjects, or causes
to be subjected, any citizen of the United States . . . the
deprivation of any right . . . secured by the Constitution and
laws shall be liable to the party injured."  42 U.S.C. § 1983.
Thus, to state a claim under Section 1983, a plaintiff must
allege that (1) she was deprived of a right secured by the
Constitution or laws of the United States, and (2) the alleged
deprivation was committed under color of state law.  <u>American</u>
<u>Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50 (1999).
Defendants argue, *inter alia*, (1) CHP and Castle are immune from

24

the Section 1983 claims under Eleventh Amendment immunity,

(2) SCIF and Devereux did not act under color of state law,

(3) Devereux is entitled to absolute or qualified immunity, and

(4) Vierria's specific Section 1983 claims fail, or are barred,

as a matter of law.

### A.   State Sovereign Immunity (CHP & Castle)

CHP and Castle, in his official capacity, argue that the doctrine of sovereign immunity bars Vierria from holding CHP and Castle liable for the Section 1983 claims.   Vierria concedes that the Eleventh Amendment to the U.S. Constitution provides immunities to states, state agencies, and state officials acting in their official capacities, unless Congress has abrogated the states' immunity under section 5 of the Fourteenth Amendment. See Penhurst State School & Hospital, 465 U.S. at 100-01. Plaintiff argues, however, with respect to Section 1983, Section 5 of the Fourteenth Amendment overrides CHP and Castle's Eleventh Amendment immunity.   This argument is wholly without merit. Section 5 of the Fourteenth Amendment merely speaks to the power of Congress to enforce the Fourteenth Amendment's substantive guarantees "by enacting appropriate legislation." Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 727 (2003).   The Supreme Court has expressly held that Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivation of civil liberties." Will v. Michigan Department of State Police, 491 U.S. 58, 66 (1989).   Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is against the official's office . . . it is no different than a suit against the State itself,"

25

and thus, is also barred.  Id. at 77.  Accordingly, CHP's motion

to dismiss this claim on the ground of Eleventh Amendment

immunity is GRANTED with prejudice.  Likewise, Castle's motion to

dismiss this claim, as alleged against him in his official

capacity, on the basis of Eleventh Amendment immunity is GRANTED

without prejudice.  For the same reasons as set forth above,

plaintiff is permitted leave to amend her complaint to allege a

Section 1983 claim against Castle in his individual capacity.

### B.   Color of Law (SCIF & Devereux)

Defendants argue that Vierria fails to sufficiently allege

that SCIF and Devereux acted under color of law.  It is well

established that "private individuals may be 'under the color of

state law' where there is 'significant' state involvement in the

action."  Howerton v. Gabica, 708 F.2d 380, 382 (9th Cir. 1983).

One way to determine whether state action is significant is the

"joint action" test.  Id.  Under the "joint action" test, private

persons are acting under color of law within the purposes of

Section 1983 when they "jointly engaged with state officials in

the prohibited action"  Id.  (citing Adickes v. S.H. Kress & Co.,

398 U.S. 144, 152 (1970), superceded on other grounds; United

States v. Price, 383 U.S. 787, 794 (1966)).

Here, plaintiff alleges SCIF and Devereux jointly engaged

with CHP in a criminal conspiracy to defraud the State of

California of taxpayer funds, and then concealed the nature and

extent of their criminal activities.  (Compl. ¶ 39.)  As part of

the conspiracy, SCIF engaged in a pattern of approving CHP

Assistant and Deputy Chiefs' unwarranted and excessive disability

payments.  (Compl. ¶¶ 41, 88.)  Vierria further alleges CHP, SCIF

and Devereux conspired to harass, humiliate, and bring false or exaggerated disciplinary charges against any CHP employee who protested the fraudulent practice. (Compl. ¶¶ 39.) Further, plaintiff alleges CHP and Castle attempted to force non-compliant employees into the worker's compensation system in order to expose them to an investigation by SCIF and Devereux. (Compl. ¶¶ 42, 67.) Once in the workers' compensation system, SCIF subjected "problem employees" to excessive and prolonged investigations, and depositions into private matters unrelated to the disabilities claims. (Compl. ¶ 42.) Vierria alleges these actions were part of defendants' association designed to "intimidate, threaten and corruptly dissuade [Vierria] and other CHP employees from testifying . . . and to protect SCIF from being linked to the fraud as a form of bribery for the SCIF thefts. (Compl. ¶ 88.) Thus, Vierria alleges sufficient facts claiming that SCIF and Devereux were willful participants with CHP in the alleged criminal conspiracy. Thus, SCIF's and Devereux's motion to dismiss this claim on the basis that SCIF and Devereux were not acting under color of law is DENIED.

    **C.   Immunity (Devereux)**

        **1.   Absolute Immunity**

Devereux argues he is entitled to absolute immunity based on his role during Vierria's workers' compensation proceedings because he was performing an official function in the judicial process. The United States Supreme Court has held that judges, prosecutors, and other individuals performing official functions in the judicial process are absolutely immune from personal liability under Section 1983. <u>Brisco v. Lahue</u>, 460 U.S. 325, 335

(1983).  Derived from common-law immunity principles, absolute immunity was "based on the policy of protecting the judicial process . . . [which] formed part of a 'cluster of immunities protecting the various participants in judge-supervised trials,' which stemmed from the characteristics of the judicial process." Id. (citing Butz v. Economou, 438 U.S. 478, 511 (1978).

Although judges, prosecutors, and other individuals performing official functions in the judicial process are immune from personal liability under Section 1983, the facts of the complaint do not suggest Devereux was acting in such capacity. Although immunity has been extended to individuals acting in their official capacities who are neither prosecutors nor judges, those individuals were performing quasi-prosecutorial functions. See Coverdell v. Department of Social & Health Services, 834 F.2d 758, 762 (9th Cir. 1987).  Further, viewing the facts in the light most favorable to plaintiff, Devereux ceased acting in his official capacity when he actively participated in the criminal conspiracy among defendants.  Thus, Devereux's motion to dismiss this claim on the basis of absolute immune from a Section 1983 claim is DENIED.

### 2.   Qualified Immunity

Devereux argues he is entitled to qualified immunity because he was acting, at all relevant times, as a government official. Indeed, government officials can be entitled to qualified immunity for discretionary acts undertaken in their official capacity.  See Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982). However, Vierria argues that because SCIF is not a state actor, Devereux is not a government official.  Indeed, even defendants

argue that SCIF, and by extension Devereux, are not state actors because SCIF and the State are not so closely related that SCIF's actions are treated as those of the State.  See <u>Felix v. State Compensation Ins. Fund</u>, 2007 U.S. Dist. LEXIS 80663 (C.D. Cal., Oct. 3, 2007).  Additionally, by statute, the State has no liability for SCIF beyond SCIF's specific assets which suggests SCIF is a mutually exclusive entity.  Cal. Ins. Code § 11771.  Moreover, case law treats SCIF like any other private carrier, rather than a government entity.  Specifically, SCIF is not subject to the Government Tort Claims Act and may be sued in the same manner as any other private carrier.  See <u>Burum v. State Compensation Ins. Fund</u>, 30 Cal. 2d 575, 585 (1947).  Therefore, the alleged facts do not establish that SCIF is a state actor.  Because SCIF does not qualify as a state actor, Devereux's motion to dismiss this claim on the basis of qualified immunity as a government official is DENIED.

**D.   Equal Protection Claim (CHP & Castle)**

Vierria alleges CHP and Castle violated her Constitutional rights to equal protection, "by establishing different classes of employees by groups for the purpose of imposing disciplinary actions, providing disability benefits, promotions and the handling of worker's compensation claims."  (Compl. ¶ 95.)  However, as stated above, the Eleventh Amendment provides CHP and Castle, in his official capacity, immunity from liability for Section 1983 claims.  See <u>Will</u>, 491 U.S. at 66.  Further, Vierria does not request leave to amend the complaint to allege this violation of law against Castle in his individual capacity.  To that extent, CHP & Castle's motion to dismiss this claim is

1  GRANTED with prejudice.

2        **E.   Free Speech Claim (Castle & Devereux)**

3       Defendants argue that Vierria fails to allege a Section 1983

4  claim based on a violation of her free speech rights because

5  defendants' alleged conduct would have no tendency to chill her

6  from speaking.   To demonstrate a violation of the First

7  Amendment, a plaintiff must allege that "by his actions [the

8  defendant] deterred or chilled [the plaintiff's] political speech

9  and such deterrence was a substantial or motivating factor in

10 [the defendant's] conduct."   <u>Mendocino Envtl. Ctr. v. Mendocino</u>

11 <u>County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999) (citing <u>Sloman v.</u>

12 <u>Tadlock</u>, 21 F.3d 1462, 1469 (9th Cir. 1994)).   However, the

13 plaintiff's speech does not necessarily need to be actually

14 inhibited.   <u>Id.</u>   Rather, a plaintiff can prove a violation of law

15 so long as "defendants *intended* to interfere with [the

16 plaintiff's] First Amendment rights."   <u>Id.</u> (emphasis in

17 original).   Thus, to establish a First Amendment claim, "the

18 proper inquiry asks 'whether an official's acts would chill or

19 silence a person of ordinary firmness from future First Amendment

20 activities."   <u>Id.</u>

21      Vierria alleges defendants "acted in concert to chill

22 Vierria's and other CHP employees' Constitutional Right to Free

23 Speech and Right to Petition for Redress."   (Compl. ¶ 106.)

24 Plaintiff alleges one of the primary purposes of defendants'

25 "investigation" was to prevent her from expressing her knowledge

26 about the potential fraudulent worker's compensation claims to

27 the District Attorney or Legislature that were in the process of

28 investigating wrongdoing.   (Compl. ¶ 107.)   Vierria further

alleges that defendants restrained plaintiff's right to report the alleged illegal activity by threatening her with termination and subjecting her to a "campaign of harassment." (<u>Id.</u>)  Also, Vierria alleges defendants conspired to engage in retaliatory acts by bringing false or exaggerated disciplinary charges against plaintiff to punish her for reporting the alleged fraudulent practices and refusing to cooperate in defendants' alleged criminal behavior.  (Compl. ¶ 42.)  Viewing the facts in the light most favorable to plaintiff, the court finds that plaintiff alleges sufficient facts to establish that defendants' alleged conduct would chill a person of ordinary firmness from future First Amendment activities.  Thus, defendants' motion to dismiss this claim is DENIED.

**F.   Taking of Property (All Defendants)**

Vierria alleges CHP, Castle, SCIF, and Devereux violated Vierria's constitutionally protected right to property "by depriving Vierria of her [employment] in an effort to cover up their own criminal conduct."  (Compl. ¶ 117.)  To state such a claim under Section 1983, a plaintiff must allege that (1) she was deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed under color of state law.  <u>American Mfrs. Mut. Ins. Co.</u>, 526 U.S. at 50.  A person deprives another of "a constitutional right, within the meaning of section 1983, if he does an affirmative act, [or] participates in another's affirmative acts . . . that causes the deprivation of which [the] complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).  However, personal participation is not necessary to establish Section 1983

liability.  Id.  "Anyone who 'causes' any citizen to be subjected
to a constitutional deprivation is also liable."  Id.  The
requisite causal connection can be established "by setting in
motion a series of acts . . . the actor knows or reasonably
should know would cause others to inflict the constitutional
injury."  Johnson, 588 F.2d at 743-44.  Defendants argue, *inter
alia*, (1) CHP and Castle are immune from the Section 1983 claims
under the doctrine of sovereign immunity, (2) Vierria's claim
based on due process is barred by the state remedies doctrine,
and (3) Vierria fails to allege a plausible connection between
SCIF's and Devereux's actions and Vierria's resignation.

### 1.   Sovereign Immunity

Like the equal protection claim, the Eleventh Amendment
provides CHP and Castle, in his official capacity, immunity from
liability against this claim.  See  Will, 491 U.S. at 66.
Plaintiff does not request leave to amend the complaint to allege
a takings claim against Castle in his individual capacity.  To
that extent, CHP's and Castle's motion to dismiss this claim on
the ground of Eleventh Amendment immunity is GRANTED with
prejudice.

### 2.   State Remedies Doctrine

Defendants argue that Vierria's Section 1983 takings claim,
based on a violation of her due process rights, is barred because
there are alternative state remedies that Vierria has not
exhausted.  A procedural due process claim is not cognizable
under Section 1983 "when a state's post-deprivation remedies are
adequate to protect a victim's procedural due process rights."
See Wood v. Ostrander, 879 F.2d 583, 588 (9th Cir. 1989).

1    Defendants argue that California's laws protecting against
2  constructive discharge in violation of public policy obviate the
3  need for this court to entertain Vierria's claim.  See Brogan v.
4  San Mateo County, 901 F.2d 762 (9th Cir. 1990).  However, Brogan
5  is distinguishable.  There, the plaintiff suffered a disabling
6  heart attack at 61 years of age.  Id.  As a condition of
7  receiving public assistance, the plaintiff was subject to a
8  mandatory Vocational Rehabilitation Program.  Id.  Instead of
9  attending, the plaintiff filed suit claiming forced servitude
10 under the Thirteenth Amendment pursuant to 42 U.S.C. 1983.  Id.
11 The court found, the "lack of a constitutional claim [was]
12 particularly apparent" because "the County provide[d] workers'
13 compensation and disability benefits to participants [like the
14 plaintiff] [and] . . . plaintiff never applied for those
15 benefits."  Id. at 765.

16   While in Brogan the court found there were adequate
17 alternative state remedies the plaintiff could have pursued,
18 Vierria alleges the referenced state remedies available to her
19 are inadequate.  Defendants argue that Vierria could have availed
20 herself of remedies before the State Personal Board ("SPB").
21 However, Vierria alleges that, notwithstanding the SPB's alleged
22 findings regarding CHP's non-compliance with State law, CHP
23 "punishe[d] those employees that it deemed disloyal."  (Compl.
24 ¶ 78.)  Further, because CHP controls promotions and
25 advancements, Vierria alleges "her career advancement
26 possibilities are all but gone," and she "anticipat[es] ongoing
27 harassment if she returned to the DRS."  (Id.)

28

33

Thus, Vierria has alleged sufficient facts to establish the inadequacy of any claimed post-deprivation remedies.  See Wood, 879 F.2d at 588.  As such, defendants' motion to dismiss this claim under the state remedies doctrine is DENIED.

### 3.   SCIF and Devereux's Involvement

SCIF and Devereux argue that Vierria fails to allege a plausible connection between SCIF and Devereux's action and Vierria's resignation because neither SCIF nor Devereux are alleged to be Vierria's employer.  However, Vierria's claim is predicated upon a taking of property, rather than wrongful termination.  Under Section 1983, a person can be held liable to another if under color of law, an actor performs or participate in another's affirmative acts which cause the alleged deprivation of rights.  Johnson, 588 F.2d at 743.  The requisite causal connection can be established "by setting in motion a series of acts . . . the actor knows or reasonably should know would cause others to inflict the constitutional injury."  Id. at 743-44.

As alleged in the complaint, SCIF and Devereux were actively involved in subjecting Vierria to "never-ending investigations and harassment" which ultimately caused her resignation.  (Compl. ¶78.)  More specifically, Vierria alleges SCIF and Devereux, inter alia, subjected Vierria to a "sham investigation," "made continuous attempts to coerce [Vierria] into admitting" she leaked confidential information, and hired private investigators to ask questions of witnesses that "delved into [Vierria's] personal and private life" in an effort to cover up their own criminal conduct.  (Compl. ¶¶ 68, 51, 69, 117.)  Vierria alleges Devereux, "due to 'malicious, irrational, and/or plainly

34

arbitrary' motivations . . . repeatedly charged [Vierria] with dishonesty and insubordination when no such conduct occurred." (Compl. ¶ 118.)  Based on the aforementioned allegations, Vierria alleges plausible facts to suggest SCIF and Devereux knew, or should have known, that their conduct would cause plaintiff some constitutional injury.  See Johnson, 588 F.2d at 743-44.  Thus, a sufficient causal connection has been established, and defendants' motion to dismiss this claim for lack of such a causal connection is DENIED.

### G.   Right to Privacy

Vierria alleges a Section 1983 claim based on defendants' violation of her fundamental right to privacy recognized under the California Constitution.  Defendants move to dismiss this claim on the basis that Vierria fails to allege a deprivation of a federal right to privacy as required by Section 1983.  To state a cause of action under Section 1983, "the plaintiff must allege that some person has deprived [her] of a federal right." Gomez v. Toledo, 446 U.S. 635, 640 (1980).  Vierria concedes that this cause of action has been plead improperly and seeks leave to amend to plead a violation of the United States Constitution.

Defendants' motion to dismiss this claim on the basis that the complaint does not allege a deprivation of a federally protected right is GRANTED.  However, Vierria is granted leave to amend.

### III. POBR (Against All Defendants)

Vierria alleges defendants violated the POBR pursuant to Cal. Gov't Code § 3301 ("Section 3301") and Cal. Penal Code § 830.2 ("Section 830.2").  Defendants move to dismiss this claim

on the basis that Vierria does not allege sufficient facts to establish that she is a "public safety officer" pursuant to Section 3301 defined in Section 830.2. POBR states "[w]hen any public safety officer is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the employing public safety department, that could lead to punitive action, the interrogation shall be conducted" under specified conditions. Cal. Gov't Code § 3303. Section 830.2 provides that employees of CHP are considered peace officers "provided that the primary duty of the peace officer is the enforcement of any law relating to the use, or operation of vehicles upon the highways, or laws pertaining to the provision of police services as set forth in the Vehicle Code and Government Code." Cal Pen Code 830.2(a).

The complaint alleges that Vierria began work for CHP as an Associate Governmental Analyst in the DRS. (Compl. ¶ 16.) Further, the DRS is the department within CHP that manages employee injury and illness cases. (Compl. ¶ 18.) However, nowhere in the complaint does Vierria allege that her primary duty, as a peace officer, is to enforce laws pertaining to the operation of vehicles or police services. Although Vierria alleges that she is covered under POBR, a plain reading of the statute prohibits the court from finding that the alleged facts can be reasonably read to establish Vierria meets the definition of peace officer under Section 830.2(a). Thus, defendants' motion to dismiss this claim on the basis that Vierria is not protected under POBR is GRANTED with prejudice.

**IV.  Retaliation for Whistleblowing (CHP, or in the alternative, Castle)**

Vierria alleges CHP retaliated against Vierria for refusing to participate in unlawful activity in violation of Cal. Lab Code § 1102.5.  Section 1102.5 subdivision (a) provides that "an employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses" unlawful activity.  Cal. Lab. Code §1102.5(a).  Further, Section 1102.5 subdivision (c) establishes that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in" unlawful activity.  Cal. Lab. Code §1102.5(c).

CHP seeks to dismiss this claim based on Eleventh Amendment immunity.  In her opposition, Vierria concedes that CHP cannot be held liable due to Eleventh Amendment immunity.  Thus, CHP's motion to dismiss this claim is GRANTED with prejudice.

In the alternative, Vierria seeks leave to amend the complaint to hold Castle liable in his individual capacity.  To the extent that Vierria seeks to hold Castle liable in his official capacity, that claim would also be barred by the Eleventh Amendment because sovereign immunity extends to state officials acting in their official capacity.  See Kentucky v. Graham, 473 U.S. at 166.  To the extent that Vierria seeks to hold Castle liable in his individual capacity, that claim would also fail because the alleged violations under Section 1102.5 are predicated upon an employer/employee relationship.  See Cal. Lab

37

Code § 1102.5.  The relevant portions of the statute clearly
indicate that the statute is meant to establish prohibited
activity by employers, rather than individuals.  <u>See</u> <u>id.</u> ("an
employer may not. . .").  However, Vierria never alleges Castle,
in his individual capacity, is an *employer* subject to the
statute.  Further, the California Supreme Court has held, "there
is no law . . . to support the notion that anyone other than an
employer can discharge an employee." <u>Milklosky v. Regents of the</u>
<u>University of California</u>, 44 Cal. 4th 876, 901 (2008).  Thus,
Castle's motion to dismiss this claim on the basis of Eleventh
Amendment immunity is GRANTED with prejudice.

**V.  Discrimination, Harassment and Retaliation in Violation FEHA
     (CHP, or in the alternative, Castle)**

     Vierria alleges CHP violated Cal. Gov't Code § 12940, *et.*
*seq.*, by harassing and discriminating against Vierria because of
her disability, specifically Vierria's Post Traumatic Stress
Disorder ("PTSD").  (Compl. ¶ 153.)  Section 12940 prohibits an
employer from discriminating, harassing and/or retaliating
against an employee because of a physical or mental disability.
Cal. Gov't Code § 12940.

     CHP seeks to dismiss this claim based on Eleventh Amendment
immunity.  Vierria concedes CHP has Eleventh Amendment immunity.
Thus, CHP's motion to dismiss this claim on the ground of
Eleventh Amendment immunity is GRANTED with prejudice.

     In the alternative, Vierria seeks leave to amend the
complaint to hold Castle liable in his individual capacity.  Like
the retaliation for whistleblowing claim, the alleged violations
under Section 12940 are predicated upon an employer/employee

38

relationship.  See Cal. Gov Code § 12940.  However, Vierria never alleges Castle, in his *individual* capacity, is, or could be, an "employer" subject to the statute.  Thus, Castle's motion to dismiss this claim on the basis of Eleventh Amendment immunity is GRANTED with prejudice.

**VI.   Failure to Take Reasonable Steps to Prevent Discrimination in the Workplace (CHP, or in the alternative, Castle)**

Vierria alleges CHP violated Cal. Gov't Code § 12900, *et. seq.*, ("Section 12900") because CHP, aware of the harassment and discrimination Vierria suffered because of her PTSD, did not take prompt remedial action.  (Compl. ¶¶ 158-159.)  Section 12940 subsection (k) makes it unlawful for an employer who knew or should have known of discrimination or harassment to fail to take prompt remedial action.  Cal. Gov't Code § 12940(k).

CHP seeks to dismiss this claim based on Eleventh Amendment immunity.  Vierria concedes CHP has Eleventh Amendment immunity.  CHP's motion to dismiss this claim is thus GRANTED with prejudice.

In the alternative, Vierria seeks leave to amend the complaint to hold Castle liable in his individual capacity.  Like the above claims, the relevant portions of the statute clearly indicate that the statute is meant to establish prohibited activity by employers, rather than individuals.  See Cal. Gov't Code § 12940(k).  Vierria never alleges Castle, in his *individual* capacity, is an "employer" subject to the statute.  Thus, Castle's motion to dismiss this claim on the basis of Eleventh Amendment immunity is GRANTED with prejudice.

**VII. Abuse of Process (All Defendants)**

Vierria alleges defendants misused the worker's compensation claim appeals process to humiliate, harass, and retaliate against her for being unwilling to participate in their illegal conduct. (Compl. ¶163.)  A plaintiff can sufficiently state a claim for abuse of process if "(1) an ulterior motive [is used] in the process and (2) the use of process [is done] in a wrongful manner."  <u>Draisn v. Jacoby & Meyer</u>, 150 Cal. App. 3d 481, 485 (1984).  Defendants move to dismiss on the grounds that (1) CHP is immune from liability under the Eleventh Amendment immunity, (2) the abuse of process claim is preempted by the WCA, and (3) Devereux is entitled to absolute or qualified immunity.

**A.   State Sovereign Immunity**

CHP seeks to dismiss this claim based on Eleventh Amendment immunity.  Like above, Vierria concedes that CHP is immune.  Thus, CHP's motion to dismiss this claim on the ground of Eleventh Amendment immunity is GRANTED with prejudice.

**B.   WCA Preemption**

Defendants argue that the WCA preempts an action for abuse of process because the WCA is the exclusive remedy for industrial injuries that arise out of the normal course of employment.  <u>See Fermino v. Fedco, Inc.</u>, 7 Cal. 4th 701, 717 (1994).  The WCA may preempt actions for abuse of process if the "injuries arising out of and in the course of the workers' compensation claims process fall within the scope of the exclusive remedy provision."  <u>Vacanti v. State Compensation Ins. Fund</u>, 24 Cal. 4th 800, 811 (2001).  However, the exclusive remedy provision applies "*only* in cases of such industrial personal injuries" where "the injury is

40

'personal physical injury or death.'"   Coca-Cola Bottling Co. v. Superior Court, 233 Cal. App. 3d 1273, 1289 (1991).  Indeed, "*[e]conomic . . . damages incurred independent of any disability cannot logically be included in the concept of 'injury' in the sense of 'personal injury*."   Id. at 1291 (italics in original). Thus, "the Act was intended to cover injuries to the employee's *person*, not to his or her property rights."   Id. at 1290 (citing Howland v. Balma, 143 Cal. App. 3d 899, 901 (1983)).

In the instant case, Vierria alleges economic injuries predicated upon defendants' violations of her property and privacy rights.  (Compl. ¶ 79.)  Indeed, Vierria alleges property damages, independent of her claimed disability, which were caused by defendants alleged misuse of the workers' compensation appeals process resulting in her constructive termination.  (Compl. ¶¶ 117, 119.)

Moreover, notwithstanding that some injuries arising from workers' compensation investigations are preempted by the Act,[6] a plaintiff may bring a private cause of action "when the entity commits tortious acts independent of its role as a provider of workers' compensation."   Marsh & McLennan v. Superior Court, 49 Cal. 3d 1, 10 (1989).  Vierria alleges defendants' actions were

---

[6]   See Denning v. Esis Corp., 139 Cal. App. 3d 946 (1983). There, an employee brought an action for damages, bad faith, and emotional distress arising from a workers' compensation claim. The trial court sustained the defendants' motion to dismiss on the ground that the plaintiff's claims came within the exclusive jurisdiction of the Workers' Compensation Appeals Board. Similarly, in Mottola v. R.L. Kautz & Co., 199 Cal. App. 3d 98 (1988), an injured employee brought suit against his employer for intentional and negligent infliction of emotional distress, arising from a workers' compensation benefits claim.  The trial court sustained the employer's demurrer, based on the exclusive remedy provisions of the WCA.

outside of their role as a provider of workers' compensation when defendants entered into a criminal conspiracy to harass, humiliate, and bring false or exaggerated disciplinary charges against any CHP employee who protested the fraudulent practice. (Compl. ¶¶ 39.)  Further, Vierria alleges defendants abused the worker's compensation system by: (1) subjecting Vierria to a "sham investigation;" (2) making "continuous attempts to coerce [Vierria] into admitting" she leaked confidential information; (3) hiring private investigators to question witnesses about Vierria's personal and private life; and (4) publishing plaintiff's medical records to other CHP employees in an effort to cover up defendants' own criminal conduct.  (Compl. ¶¶ 68, 51, 69, 117.)  Further, Vierria alleges Devereux, in order to continue the "sham investigation" "repeatedly charged [Vierria] with dishonesty and insubordination when no such conduct occurred."  (Compl. ¶ 118.)  Vierria alleges all of the aforementioned allegations caused her constructive termination, thereby depriving Vierria of a property interest.  Thus, because Vierria alleges non-personal injury damages, independent from a claimed disability, defendants' motion to dismiss this claim based on the exclusive remedy provision is DENIED.

**C.   Immunity (Devereux)**

As stated earlier, Devereux is not entitled to absolute, or qualified, immunity because extending immunity to DEVEREUX in this case is not necessary to "protect the judicial process" nor is DEVEREUX is entitled to qualified immunity because he was not acting as a government official.  Thus, Devereux's motion to dismiss this claim based on absolute, or qualified immunity, is

1  DENIED.

2  **VIII. IIED (All Defendants)**

3      Vierria alleges defendants intentionally intimidated,
4  ridiculed and harassed her by means of a sham investigation and
5  spurious adverse actions causing Vierria severe emotional harm.
6  (Compl. ¶¶ 166-168.)  To state a cause of action based on IIED, a
7  plaintiff must allege: "(1) extreme and outrageous conduct by the
8  defendant with the intention of causing, or reckless disregard of
9  the probability of causing, emotional distress; (2) . . . severe
10  or extreme emotional distress; and (3) actual and proximate
11  causation of the emotional distress by the defendant's outrageous
12  conduct." Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965,
13  1001 (1993).  Defendants move to dismiss this claim on the
14  grounds that (1) CHP is immune from liability under the doctrine
15  of state sovereign immunity, (2) defendants' conduct was not
16  extreme and outrageous, (3) the IIED claim is preempted by the
17  WCA, and (4) Devereux is entitled to absolute or qualified
18  immunity.

19      **A.   State Sovereign Immunity**

20      CHP seeks to dismiss this claim based on Eleventh Amendment
21  immunity.  Vierria concedes CHP has Eleventh Amendment immunity.
22  Thus, CHP's motion to dismiss this claim on the ground of
23  Eleventh Amendment immunity is GRANTED with prejudice.

24      **B.   Outrageous Conduct**

25      Defendants argue that their alleged conduct was not extreme
26  and outrageous.  Behavior may be considered outrageous if "a
27  defendant (1) abuses a relation or position which gives him power
28  to damage the plaintiff's interest; (2) knows the plaintiff is

43

susceptible to injuries through mental distress; or (3) acts
intentionally or unreasonably with the recognition that the acts
are likely to result in illness through mental distress." <u>Cole
v. Fair Oaks Fire Prot. Dist.</u>, 43 Cal. 3d 148, 155 (1987).
Vierria alleges defendants abused their position by conspiring to
use their authority and control of the workers' compensation
system to intimidate, embarrass and humiliate Vierria, by
"bringing false or exaggerated disciplinary charges against [her
for] not cooperat[ing] in the fraud." (Compl. ¶ 42.) Further,
Vierria alleges SCIF took advantage of Vierria's mental distress
caused by her PTSD, by subjecting her to another "sham
investigation" after four physicians agreed that Vierria's
physical and emotional symptoms were caused by work-related
stressors and approved three months leave. (Compl. ¶¶ 65, 68.)
Vierria alleges that defendants' conduct "was malicious,
intentional, and oppressive," and a direct and proximate cause of
her injuries. (Compl. ¶¶ 169-170.) Thus, defendants' motion to
dismiss this claim on the basis that their conduct was not
extreme and outrageous is DENIED.

### C. WCA Preemption

Defendants argue that the WCA preempts an action for IIED
because the Act is the exclusive remedy for industrial injuries
that arise in the normal course of employment. <u>See</u> <u>Fermino</u>, 7
Cal. 4th at 717. A plaintiff's emotional distress injuries are
not preempted by the exclusive remedy provision of the Act, if
"the employer's conduct contravenes fundamental public policy."
<u>Miklosy</u>, 44 Cal. 4th at 902. Such a contravention of fundamental
public policy includes, "an employer's . . . demand that the

44

employee commit a criminal act to further its interests, [or] an

employer . . . coerc[ing] compliance with such unlawful

directions by discharging an employee who refuses to follow such

an order."  <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal. 3d 167, 178

(1980).

Vierria alleges defendants conspired to harass, humiliate,

and bring false or exaggerated disciplinary charges against any

CHP employee who protested the fraudulent practices.  (Compl. ¶

42.)  Further, plaintiff asserts CHP and Castle attempted to

force non-compliant employees into the worker's compensation

system in order to expose them to an investigation by SCIF.

(Compl. ¶¶ 42, 67.)  Once in the workers' compensation system,

SCIF subjected "problem employees" to excessive and prolonged

investigations, and depositions into private matters unrelated to

the disabilities claims.  (Compl. ¶ 42.)  Vierria alleges

defendants engaged in this activity to dissuade Vierria "from

testifying or informing the . . . Grand Jury . . . of the

identity of CHP high level officials who were fraudulently making

worker's (sic) compensation claims and . . . to protect SCIF from

being linked to the fraud as a form of bribery for the SCIF

thefts."  (Compl. ¶ 88.)  Because Vierria alleges defendants'

conduct contravenes a fundamental public policy, defendants'

motion to dismiss this claim based on the workers' compensation

exclusive remedy provision is DENIED.

### D.   Immunity (Devereux)

As stated earlier, Devereux is not entitled to absolute, or

qualified, immunities because extending immunity to Devereux is

not necessary to "protect the judicial process" nor is Devereux

entitled to qualified immunity because he was not acting as a government official.  Thus, Devereux's motion to dismiss this claim based on absolute, or qualified immunity, is DENIED.

**CONCLUSION**

For the foregoing reasons, the court makes the following orders:

1.  CHP's motion to dismiss all claims against it on the basis of Eleventh Amendment immunity is GRANTED with prejudice.

2.  Castle's motion to dismiss all claims, as alleged against him in his official capacity, based on Eleventh Amendment immunity is GRANTED with leave to amend.

3.  RICO Claim:

    a.  Castle's motion to dismiss plaintiff's RICO claim on the ground that Vierria has not alleged facts to establish Castle was involved in a RICO "enterprise" is DENIED.

    b.  Defendants' motion to dismiss the RICO predicate act of "theft/embezzlement from an employee benefit plan" pursuant to 18 U.S.C. § 664 is GRANTED with prejudice.

    c.  Defendants' motion to dismiss the RICO predicate act of "witness tampering" pursuant to 18 U.S.C. § 1512(b) is DENIED.

    d.  Defendants' motion to dismiss the RICO predicate act of "retaliation" pursuant to 18 U.S.C. 1513(e) is DENIED.

    e.  Defendants' motion to dismiss plaintiff's RICO

46

claim for failure to allege a pattern of
racketeering activity is DENIED.

    f.   Defendants' motion to dismiss plaintiff's RICO
claim for failing to allege a cognizable injury to
business or property is DENIED.

4.   CHP and Castle's motion to dismiss plaintiff's equal
protection claim is GRANTED with prejudice.

5.   Castle and Devereux's motion to dismiss plaintiff's
free speech claim is DENIED.

6.   Defendants' motion to dismiss plaintiff's takings claim
is DENIED.

7.   Defendants' motion to dismiss plaintiff's privacy claim
is GRANTED with leave to amend.

8.   Defendants' motion to dismiss plaintiff's POBR claim is
GRANTED with prejudice.

9.   CHP's motion to dismiss plaintiff's "retaliation" claim
pursuant to Section 1102.5 is GRANTED with prejudice.

10.  CHP's motion to dismiss plaintiff's "discrimination,
harassment, and retaliation" claim pursuant to FEHA is
GRANTED with prejudice.

11.  CHP's motion to dismiss plaintiff's FEHA claim for
failure to take reasonable steps to prevent
discrimination pursuant to Section 12900 is GRANTED
with prejudice.

12.  Defendants' motion to dismiss plaintiff's abuse of
process claim is DENIED.

13.  Defendants' motion to dismiss plaintiff's IIED claim is
DENIED.

1  Plaintiff is accorded twenty (20) days from the date of this

2  order to file a first amended complaint.  Defendants are accorded

3  twenty (20) days after service thereof to file their responses.

4       IT IS SO ORDERED.

5  DATED: June 23, 2009

6

7                                    _____

8                                    FRANK C. DAMRELL, JR.
                                     UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28