1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOVITA VIERRIA,

11              Plaintiff,                    No. CIV S-09-0305 KJM GGH

12        vs.

13   CALIFORNIA HIGHWAY PATROL, a public
     entity; TIM CASTLE, an individual;
14   STATE COMPENSATION FUND, a
     quasi-governmental entity; and CHRISTOPHER J.        ORDER
15   DEVEREUX, an individual,

16              Defendants.

17   _____/

18              This matter comes before the court upon: 1) defendants State Compensation

19   Insurance Fund's ("SCIF") and Christopher J. Devereux's ("Devereux") motion for summary

20   judgment (ECF 36); and 2) defendant Tim Castle's ("Castle") motion for summary judgment.

21   (ECF 47.)  The court held a hearing on these motions on March 2, 2011, with James Ashworth

22   appearing for plaintiff, Mark Grajski appearing for SCIF and Devereux, and Andrea Austin

23   /////

24   /////

25   /////

26   /////

1

1  appearing for Castle.  After considering the evidence before it and the parties' oral arguments,

2  and good cause appearing, the court GRANTS the defense motions for summary judgment.[1]

3  I.      PROCEDURAL HISTORY

4              Plaintiff Jovita Vierria ("plaintiff") filed the original complaint in this matter on

5  February 3, 2009.  (ECF 1.)  Castle, CHP, Devereux and SCIF responded with two separate

6  motions to dismiss in lieu of answers on April 20, 2009.  (ECF 8 & 9.)  The motions were

7  granted in part and denied in part on June 24, 2009.  (ECF 19.)

8              Plaintiff filed an amended complaint, which is the operative complaint, on July

9  13, 2009.  (ECF 20.)  The amended complaint alleges six causes of action: 1) violation of the

10  Racketeering Influenced and Corrupt Organizations Act ("RICO"); 2) violation of the right to

11  free speech; 3) taking of property; 4) discrimination, retaliation and harassment in violation of

12  the Americans with Disabilities Act;[2] 5) abuse of process; and 6) intentional infliction of

13  emotional distress ("IIED").  (*Id.*)

14              Devereux and SCIF filed their answers on August 3, 2009.  (ECF 22.)  Castle and

15  CHP filed a motion to dismiss certain claims alleged in the amended complaint in lieu of an

16  answer on August 3, 2009.  (ECF 23.)  The motion was granted on September 29, 2009.  (ECF

17  27.)  Castle filed his answer on October 14, 2009.  (ECF 29.)

18              Devereux and SCIF filed their present motion for summary judgment on

19  December 9, 2010.  (ECF 36.)  Plaintiff filed her opposition on January 14, 2011.  (ECF 37.)

20  Devereux and SCIF filed their reply on January 21, 2011.  (ECF 44.)

21  /////

22  /////

23

24          [1] This order is dispositive of this case, as the only claim brought against California
25  Highway Patrol ("CHP") in the amended complaint was dismissed; therefore, CHP is no longer a
   party to this action.  (Sept. 29, 2009 Order, ECF 27.)

26          [2] This cause of action was dismissed.  *See* note 1 *supra*.

2

1    Castle filed his present motion for summary judgment on January 28, 2011.  (ECF

2    47.)  Plaintiff filed her opposition on February 16, 2011.  (ECF 51.)  Castle filed his reply on

3    February 23, 2011.  (ECF 56.)

4    II.    UNDISPUTED FACTS[3]

5    SCIF is CHP's workers' compensation claims adjuster.  (SCIF & Devereux's

6    Statement of Undisputed Facts ¶ 1, ECF 36-2 (hereinafter, "ECF 36-2"); Pl.'s Opp'n to ECF 36-

7

8    _____

    [3] Plaintiff disputes several facts the court deems to be undisputed and so relies on here –
9    specifically, ECF 37-1 ¶¶ 12-14, 16-20, 24, 27-28, 30-34 – for reasons ranging from their being
based on defective citations (ECF 37-1 ¶¶ 12-14, 16-20, 27-28, 30-34) to their being used
10   objectionably (ECF 37-1 ¶¶ 12-13, 16-20).

11       With regard to the objections based on allegedly defective citations, plaintiff cites to
several Ninth Circuit cases to show it "adheres to strict specificity requirement [sic]."  (*Id.*)
12   While such defects may "warrant[] exclusion of the evidence," the decision to exclude evidence
in this context is within the trial court's discretion.  *Orr v. Bank of America*, 285 F.3d 764, 775
13   (9th Cir. 2002).  Moreover, the court finds that plaintiff is not actually disputing these facts;
rather, plaintiff is disputing how they are presented and the purpose for which she believes they
14   are being used.  The court does not recognize this as creating a "genuine dispute as to [these]
material [facts]."  FED. R. CIV. P. 56(a).  This conclusion also applies to other instances where
15   plaintiff purports to dispute facts without actually denying them.  (ECF 37-1 ¶¶ 24, 51-52, 54-
56.)

16       In addition, plaintiff argues that Exhibit 1 attached to the transcript of her deposition, on
17   which several of these undisputed facts rely, is inadmissible evidence because it is hearsay and
lacks foundation.  (Pl.'s Obj. Evid. No. 2, ECF 37.)  Exhibit 1 is entitled "Chronology for Jovita
18   Vierria's CT 7/12/07 Injury Case," which plaintiff claims "is essentially a journal kept by Ms.
Vierria during a period of significant job-related stress."  (*Id.*)  Plaintiff admits to having
19   prepared the "journal" and, from the title and timing, it appears to have been prepared in
preparation for plaintiff's workers' compensation claim.  In any case, contents of the journal are
20   not hearsay, as they are admissions by a party-opponent.  FED R. EVID. 801(d)(2).  Plaintiff has
admitted to preparing this journal (*see* Pl.'s Obj. Evid. No. 2; Grajski Decl., Ex. A, Vierria Depo.
21   at 140:20-21) and it is being offered into evidence against her.

22       The court notes that it only addresses objections to evidence where it relies on the
underlying evidence to which objection is being made.  The court takes judicial notice as
23   requested of the adjudicative facts contained in the following, and limited notice where only
certain facts are referenced in a parenthetical following an exhibit identifier: ECF 36-10 Exs. A
24   (fact and dates of publication), B, E & F; ECF 41 Exs. A, B, & C; ECF 47-3 Exs. A & B; ECF
53 Exs. A (fact and dates of publication), B, C & G.  "Judicial notice is appropriate for records
25   and 'reports of administrative bodies.'"  *United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir.
2008) (quoting *Interstate Natural Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).
26   In addition, the court "may take judicial notice of court filings and other matters of public
record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2005).

3

2 ¶ 1, ECF 37-1 (hereinafter, "ECF 37-1").)  Devereux is staff counsel for SCIF.  (Am. Compl. ¶ 8.)  Castle is an employee of CHP, being sued in his individual capacity (*id.* ¶ 5), and was plaintiff's supervisor.  (*See* Castle's Mem. P. & A. in Supp. Summ. J. ("Castle's Mem.") at 1, ECF 47-1.)  During the relevant time, plaintiff was employed by the Disability and Retirement Section ("DRS") of the CHP, where she acted as a liaison between CHP and SCIF in handling the workers' compensation claims of CHP employees and assisted the relatives of deceased CHP personnel with benefits issues.  (ECF 36-2 ¶¶ 3, 4; ECF 37-1 ¶¶ 3, 4.)

In September 2004, *The Sacramento Bee* published a series of articles regarding the alleged practice of high-ranking CHP officers claiming work injuries on the eve of retiring, dubbed "Chief's Disease."  (ECF 36-2 ¶ 5; ECF 37-1 ¶ 5.)  In May 2005, the Sacramento County District Attorney began an investigation into the Chief's Disease allegations.  (ECF 36-2 ¶ 9; ECF 37-1 ¶ 9; Castle's Statement of Undisputed Facts ¶ 12, ECF 47-2 (hereinafter, "ECF 47-2"); Pl.'s Opp'n to ECF 47-2 ¶ 12, ECF 50 (hereinafter, "ECF 50").)

Plaintiff's relationship with some coworkers began deteriorating in late 2005.  (ECF 36-2 ¶¶ 12-14, 16-20, 27-28; Grajski Decl., Ex. A, ECF 36-4.)  One of these employees, Helen Dodson, reported that plaintiff was planning to leak confidential information of a high-ranking CHP employee to *The Sacramento Bee* and frame Dodson for the leak.  (ECF 47-2 ¶ 14; ECF 50 ¶ 14.)  In January 2007, CHP inspected plaintiff's computer and interrogated plaintiff as part of its investigation into Dodson's report.  (ECF 36-2 ¶ 24; Grajski Decl., Ex. A, Vierria Depo. at 121:13-126-8, 231:25-232:2; Vierria Decl. ¶ 9; Am. Compl. ¶ 58.)  Also in 2007, defendant Castle hired a counselor to repair morale and working relationships at DRS.  (ECF 36-2 ¶ 30; Grajski Decl., Ex. A, ECF 36-4.)  The counselor led a group meeting with the whole office in June 2007, at which a coworker accused plaintiff of "'being the problem in [DRS] for the past ten years,'" leading plaintiff to become "very upset."  (ECF 36-2 ¶¶ 31-33; Grajski Decl., Ex. A, ECF 36-4; ECF 47-2 ¶ 29; Grajski Decl., Ex. A, Vierria Depo. at 136:22; Am. Compl. ¶ 64.)  On July 12, 2007, plaintiff met with the counselor individually where she

1   "[broke] down" (ECF 36-2 ¶ 34, Grajski Decl., Ex. A) and commenced a leave of absence.  (ECF

2   36-2 ¶ 35; ECF 37-1 ¶ 35.)  On July 25, 2007, plaintiff "filed a workers' compensation claim for

3   stress from cumulative trauma dating back to 2003" (*id.*) on the recommendations of the

4   management consultant and her physician.  (ECF 47-2 ¶ 31; ECF 50 ¶ 31.)

5   　　　　In or about September 2007, SCIF denied Vierria's workers' compensation claim.

6   (ECF 36-2 ¶ 50; ECF 37-1 ¶ 50.)  Plaintiff appealed to the Workers' Compensation Appeals

7   Board and SCIF assigned Devereux to represent CHP at the appeal.  (ECF 36-2 ¶ 51.)  Devereux

8   deposed Vierria over the course of seven days, from September 27, 2007 to July 22, 2008, at

9   which time he questioned her regarding a variety of topics, including her family, employment

10  and medical history, marriage, sources of workplace stress she identified, and the leak to *The*

11  *Sacramento Bee*.  (ECF 36-2 ¶¶ 52, 54-56; ECF 37-1 ¶¶ 52, 54-56.)  Plaintiff settled her

12  workers' compensation claim on September 14, 2009, after she no longer worked for CHP.

13  (ECF 47-2 ¶¶ 48-49; ECF 50 ¶¶ 48-49; ECF 36-2 ¶ 75; ECF 37-1 ¶ 75.)

14  　　　　On September 4, 2007, CHP issued a Notice of Adverse Action to plaintiff,

15  suspending her without pay for five days and transferring her to the Grants Management

16  Department for a minimum of twelve months.  (ECF 36-2 ¶ 36; ECF 37-1 ¶ 36; Grajski Decl.,

17  Ex. A, Vierria Depo. Ex. 3.)[4]  The reasons given for the adverse action were inexcusable neglect

18  of duty, insubordination, discourteous treatment of the public or other employees, willful

19  disobedience, misuse of state property and other failure of good behavior.  (Grajski Decl., Ex. A,

20  Vierria Depo. Ex. 3 at 4-5.)  Plaintiff appealed the action to the State Personnel Board ("SPB"),

21  which issued its decision on November 24, 2008.  (ECF 36-2 ¶¶ 38-39; ECF 37-1 ¶¶ 38-39.)[5]

22  SPB found that plaintiff's conduct constituted "willful disobedience [and] misuse of state

23

24  　　　[4] The court notes that these facts are inconsistent with information provided in the
amended complaint, which states plaintiff was served with the notice on September 5, 2007 and
that the notice suspended her for ten days; however, this fact is immaterial.  (Am. Compl. ¶ 73.)

25

26  　　　[5] Plaintiff alleges a different date in her complaint; however, this inconsistency is
immaterial.  (Am. Compl. ¶ 77.)

1  property" and modified the five day suspension and involuntary transfer into a letter of

2  reprimand, ordering CHP to pay plaintiff all back pay and benefits owed.  (Grajski Decl., Ex. A,

3  Vierria Depo. Ex. 5 at 12-13.)  However, although plaintiff was given the option of returning to

4  DRS, she remained in Grants Management until November 2008, when she transferred to

5  CalSTRS, another state agency.  (ECF 36-2 ¶ 103; ECF 37-1 ¶ 103.)

6  III.    DISCUSSION

7          A.    Summary Judgment Standard

8               A court will grant summary judgment "if . . . there is no genuine dispute as to any

9  material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

10  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

11  resolved only by a finder of fact because they may reasonably be resolved in favor of either

12  party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[6]

13               The moving party bears the initial burden of showing the district court "that there

14  is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477

15  U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that

16  there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

17  475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "[cite] to particular parts

18  of materials in the record [or show] that the materials cited do not establish the absence or

19  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

20  support that fact."  FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

21  nonmoving party] must do more than simply show that there is some metaphysical doubt as to

22  the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material*

23  fact . . . .  Only disputes over facts that might affect the outcome of the suit under the governing

24

25               [6] Rule 56 was amended, effective December 1, 2010.  However,  it is appropriate to rely
on cases decided before the amendment took effect, as "[t]he standard for granting summary
judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010

26  amendments.

1    law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48

2    (emphases in original).

3            In deciding a motion for summary judgment, the court draws all inferences and

4    views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

5    587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a

6    whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

7    issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities

8    Service Co.*, 391 U.S. 253, 289 (1968)).

9            B.    Application

10                 i.    RICO

11           To prevail on a civil RICO claim, plaintiff must prove that defendants "engaged

12   in: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity [and 5)] show

13   that [defendants] caused injury to [plaintiff's] business or property." *Fireman's Fund Ins. Co. v.

14   Stites*, 258 F.3d 1016, 1021 (9th Cir. 2001) (internal citations omitted). Plaintiff alleges two

15   predicate acts in the amended complaint: witness tampering and retaliation. *See* 18 U.S.C.

16   § 1961(1). As discussed below, the court finds there is no genuine dispute regarding the viability

17   of plaintiff's witness tampering and retaliation allegations; thus, defendants are entitled to

18   judgment as a matter of law on plaintiff's RICO claim. In addition, due to the lack of viable

19   predicate acts, it is unnecessary for the court to consider the other elements necessary to state a

20   RICO claim. *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("The plaintiff must, of course,

21   allege each of these elements to state a claim.").

22                 a.    Witness tampering

23           To maintain a claim of witness tampering, plaintiff must establish there was an

24   "official proceeding," which as relevant to this action is defined as a proceeding "involving the

25   business of insurance whose activities affect interstate commerce before any insurance

26   regulatory official or agency or any agent or examiner appointed by such official or agency to

7

1    examine the affairs of any person engaged in the business of insurance whose activities affect

2    interstate commerce."  18 U.S.C. § 1515(a)(1)(D); *see* 18 U.S.C. § 1512.

3              In the amended complaint, plaintiff alleges all defendants conspired "to use the

4    workers' compensation system 'as a tool' to deal with problem employees who could potentially

5    reveal information about their fraudulent worker's compensation claims or who could identify

6    the original leak."  (Am. Compl. ¶ 85.)  Defendants maintain there was neither an official

7    proceeding nor evidence of criminal intimidation, threat, corrupt persuasion or misleading

8    conduct.  (SCIF & Devereux's Mem. at 4, 5; Castle's Mem. at 7, 8.)

9              It is unclear from the face of the amended complaint what plaintiff contends

10   constituted an official proceeding for purposes of her allegation of witness tampering.  This fact

11   alone provides grounds for granting defendants summary judgment.  *See Wasco Products, Inc. v.*

12   *Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleming v. Lind-*

13   *Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)) ("'Summary judgment is not a procedural

14   second chance to flesh out inadequate pleadings.'").  In her memoranda in opposition to

15   summary judgment,[7] plaintiff asserts that the official proceeding on which the witness tampering

16   allegation is based is a joint task force of the San Francisco District Attorney's Office, CHP, and

17   the California Department of Insurance.  (Pl.'s Opp'n at 14.)  Plaintiff further maintains that

18   "[t]he investigation has not been concluded and given that it has gone on for over three (3) years,

19   it seems likely that someone will be indicted soon. However, it does not matter whether there are

20   any charges brought, or any testimony, it is whether there is a reasonable likelihood that there

21   may be testimony and whether the conduct of the Defendants was intended to influence that

22   testimony."  (*Id.* at 15.)  Plaintiff relies on a CHP press release dated July 25, 2007, regarding

23   /////

24
      _____

         [7] Plaintiff's opposition to Castle's contention that plaintiff cannot prove wire-tapping as
25   there was no official proceeding is identical to her opposition to the same contention made by
      SCIF and Devereux.  The court thus does not analyze each opposition separately.  (*Compare*
26   ECF 37-3 at 14-16 *with* ECF 51 at 13-15.)

1  formation of the task force, which also states that "[t]he findings of this independent examination

2  will be released this fall."  (Vierria Decl., Ex. 2.)

3      Plaintiff's arguments are wholly without merit.  Plaintiff essentially maintains

4  that a trier of fact could find that the elements of witness tampering are met where there is no

5  evidence of an official proceeding or of her being asked to provide any information for such a

6  nonexistent proceeding.  (*See* ECF 50 ¶ 53.)  Nor is there any evidence that defendants knew or

7  believed an official proceeding had begun or was likely, or that they intended to influence her

8  potential testimony.  No rational trier of fact could conclude as much (or as little).  Plaintiff also

9  fails to assert that such a proceeding was, or could have been, foreseen.  Plaintiff's mere citation

10  to a First Circuit case does nothing to meet her evidentiary burden.  (Pl.'s Opp'n at 14 (quoting

11  *United States v. Mila-Aldarondo*, 478 F.3d 52, 69 (1st Cir. 2007) ("[t]here need only be

12  'sufficient evidence that the defendant knew that an official proceeding had begun, or that he

13  believed one to be likely in the future, and that he intended to influence any possible testimony

14  in the proceeding.'")).)  To survive defendants' summary judgment motions, plaintiff must show

15  that a "'defendant [has] knowledge that his actions are likely to affect the judicial proceeding [or

16  else] he lacks the requisite intent to obstruct.'"  *Arthur Anderson*, 544 U.S. at 708 (quoting

17  *United States v. Aguilar*, 515 U.S. 593, 599 (1995)).  Plaintiff has failed to do so.

18      As the court has found that there was no official proceeding, it is unnecessary to

19  examine the other elements of a witness tampering claim.  Plaintiff's witness tampering claim

20  fails as a matter of law.

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

1        b.      Retaliation

2        18 U.S.C. § 1513(e) provides:

3            Whoever knowingly, with the intent to retaliate, takes any action
             harmful to a person, including interference with the lawful
4            employment or livelihood of any person, for providing to a law
             enforcement officer any truthful information relating to the
5            commission or possible commission of any Federal offense, shall
             be fined under this title or imprisoned not more than 10 years, or
6            both.

7    A "law enforcement officer" is "an officer or employee of the Federal Government, or a person

8    authorized to act for or on behalf of the Federal Government or serving the Federal Government

9    as an adviser or consultant." 18 U.S.C. § 1515(a)(4).   Plaintiff maintains that defendants'

10   witness tampering activities in the unidentified investigation discussed above "constitute

11   retaliation against Plaintiff for providing testimony in the investigation of the improper

12   employment practices at the CHP . . . ." (Am. Compl. ¶ 86.)

13            SCIF and Devereux contend that plaintiff cannot show their conduct constituted

14   criminal retaliation.  (SCIF & Devereux's Mem. at 7.)  Similarly, Castle contends plaintiff

15   cannot establish retaliation because there are no officers or employees of the federal government

16   involved in her claim.  (Castle's Mem. at 9.)

17             Plaintiff in fact does not allege activities involving a law enforcement officer as

18   defined by statute.  Rather, to establish her retaliation claim, plaintiff contends she was

19   prevented from providing information to individuals working for CHP, which is not a branch of

20   the federal government.  Moreover, plaintiff has admitted she "did not provide information to

21   any 'law enforcement officer' (as that term is defined in 18 U.S.C. § 1515(a)(4) . . . )" and that

22   neither Devereux nor Castle retaliated against her for doing so.  (Grajski Decl., Ex. C, Req. for

23   Adm. Nos. 60-67.)  Plaintiff's retaliation claim fails as a matter of law.

24            Because the court finds plaintiff has failed to set forth sufficient facts to show

25   defendants engaged in "racketeering activity," the court need not reach the other elements

26   /////

1    necessary to establish a civil RICO claim.  Defendants are entitled to summary judgment on this

2    claim as plaintiff's RICO claim fails as a matter of law.

3                    ii.      Violation of freedom of speech

4            Plaintiff alleges that defendants violated her right to free speech under 42 U.S.C.

5    § 1983.[8]  (*See* Am. Compl. ¶ 92.)  To prevail on claim under 42 U.S.C. § 1983, plaintiff must

6    show: "(1) the denial under color of state law (2) of a right secured by the Constitution and laws

7    of the United States."  *Smith v. Cremins*, 308 F.3d 187, 190 (9th Cir. 1962).  In order to be held

8    liable, a defendant must have "'[done] an affirmative act, [participated] in another's affirmative

9    acts, or [omitted] to perform an act which he [was] legally required to do that [caused] the

10   deprivation of which complaint is made.'"  *Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir.

11   1989) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).  However,

12               'personal participation is not the only predicate for section 1983
                 liability. Anyone who "causes" any citizen to be subjected to a
13               constitutional deprivation is also liable. The requisite causal
                 connection can be established not only by some kind of direct
14               personal participation in the deprivation, but also by setting in
                 motion a series of acts by others which the actor knows or
15               reasonably should know would cause others to inflict the
                 constitutional injury.'
16

17   *Id.* at 1438-39 (quoting *Duffy*, 588 F.2d at 743-44).  Furthermore, "[i]n order to demonstrate a

18   First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the

19   defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a

20   substantial or motivating factor in [the defendant's] conduct.'"  *Mendocino Envtl. Ctr. v.

21   Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Sloman v. Tadlock*, 21 F.3d

22   1462, 1469 (9th Cir. 1994)).  Plaintiff is required only to demonstrate that defendants intended to

23   interfere with her right to free speech.  *See id.*  However, "when a conspiracy is charged under

24

25           [8] Plaintiff does not address either 42 U.S.C. § 1985 or the California Constitution in her
     oppositions, and so has effectively abandoned these claims.  *See Shakur v. Schriro*, 514 F.3d
26   878, 892 (9th Cir. 2008).

1 Section 1983, there must also be a showing that the defendants conspired or acted jointly or in

2 concert and that some overt act must have been done in furtherance of the conspiracy." *Sykes v.*

3 *California*, 497 F.2d 197, 200 (9th Cir. 1974). It is not necessary for plaintiff to "demonstrate

4 that [her] speech was actually inhibited or suppressed[; rather] the proper inquiry asks 'whether

5 an official's acts would chill or silence a person of ordinary firmness from future First

6 Amendment activities.'" *Mendocino*, 192 F.3d at 1300 (quoting *Crawford-El v. Britton*, 93 F.3d

7 813, 826 (D.C. Cir. 1996)). To survive summary judgment, plaintiff "must produce sufficient

8 evidence to establish the existence of every essential element of [her] case on which [she] will

9 bear the burden of proof at trial." *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d

10 1458, 1462 (9th Cir. 1992) (citing *Celotex*, 477 U.S. at 322).

11    Plaintiff contends that defendants "acted in concert to chill Plaintiff's, and other

12 CHP employees Constitutional Right to Free Speech and Right to Petition for Redress [and]

13 placed a prior restraint on Plaintiff's right, and duty, to report illegal activity by threatening her

14 with termination and humiliating her by putting her through a continuous, repetitive and

15 excessive investigation and campaign of harassment." (Am. Compl. ¶ 93.) Specifically, plaintiff

16 argues "that one of the primary purposes of this 'investigation'[9] was to prevent her from

17 expressing her knowledge about the potential fraudulent worker's compensation claims to the

18 District Attorney or Legislature that were in the process of investigating the wrongdoing." (*Id.*

19 ¶ 94.)

20     a.  SCIF & Devereux

21    SCIF and Devereux contend that plaintiff's retaliation claim fails because public

22 employees' First Amendment rights are limited when they speak in their official capacities,

23

24   [9] Plaintiff does not state to which investigation she is referring, the CHP internal affairs investigation or the workers' compensation investigation. This alone is grounds for granting defendants summary judgment. *See* FED. R. CIV. P. 56(c)(1) (parties must "[cite] to particular

25 parts of materials in the record [or show] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

26 support that fact").

Vierria did not engage in the conduct that allegedly led to the retaliation, and plaintiff provides no evidence that they acted out of a motivation to prevent Vierria from reporting Chief's Disease or that the San Francisco DA investigation had anything to do with Devereux's ex-wife's company.  (SCIF & Devereux's Mem. at 11 & 12.)

In response, plaintiff maintains that "[a]fter being harassed and humiliated . . . after being involuntarily constructively terminated . . . and after being repeatedly told that the worker's compensation claim would only be settled if she agreed not to return to DRS . . . anyone's willingness to speak out about the fraud and embezzlement within the CHP would be chilled. Defendants SCIF and DEVEREUX could have no other intent and a reasonable jury could conclude so." (Pl.'s Opp'n to SCIF & Devereux at 18.)

Plaintiff has failed to present evidence supporting any of the elements necessary for maintaining a § 1983 claim for violation of her right to freedom of speech against SCIF and Devereux.  She admits "that Devereux did nothing to influence, delay or prevent her from testifying in connection with the Sacramento County District Attorney's investigation, and [that] he did not conspire with CHP or Castle to do so."  (ECF 36-2 ¶ 106; ECF 37-1 ¶ 105.)  She also admits she "cannot identify committee, date, or subject matter of the 'legislative hearing' with respect to which she alleges Defendants tried to prevent her participation" and that she "did not testify in the 'legislative hearing' [] and she was not asked to testify in the hearing."  (ECF 36-2 ¶¶ 111-112; ECF 37-1 ¶¶ 110-111.)  Moreover, plaintiff has admitted that: 1) she never intended to offer information or testimony in connection with a Department of Insurance audit of SCIF; 2) she never reported or intended to report misconduct at CHP to federal authorities or to the State Legislature; and 3) Devereux and Castle did not conspire to influence, delay, or prevent her from testifying in connection with proceedings before the Department of Insurance or the Sacramento County District Attorney/Grand Jury investigation.  (ECF 47-2 ¶¶ 50-52, 54-55; ECF 50 ¶¶ 50-52, 54-55.)

/////

13

1    Plaintiff's First Amendment claim against SCIF and Devereux cannot survive

2    summary judgment; it fails as a matter of law.

3            b.    Castle

4     Castle contends plaintiff cannot establish that her speech was constitutionally

5    protected, has no evidence that Castle took any adverse action against her, and cannot prove

6    conspiracy or intent to chill her speech.  (Castle's Mem. at 12-13.)  Castle also maintains he is

7    entitled to qualified immunity.  (*Id.* at 14.)

8            Plaintiff contends that Castle is not entitled to qualified immunity because his

9    "conduct is clearly outside [the] scope [of Government Code section 821.6]."[10]  (Pl.'s Opp'n to

10   Castle at 19-20.)  California Government Code § 821.6 provides that: "[A] public employee is

11   not liable for injury caused by his instituting or prosecuting any judicial or administrative

12   proceeding within the scope of his employment, even if he acts maliciously and without probable

13   cause."

14           To state a First Amendment claim against a public employer, "'an employee must

15   show: (1) the employee engaged in constitutionally protected speech; (2) the employer took

16   'adverse employment action' against the employee; and (3) the employee's speech was a

17   'substantial or motivating factor for the adverse action.'"  *Lakeside-Scott v. Multnomah County*,

18   556 F.3d 797, 803 (9th Cir. 2009) (quoting *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir.

19   2007)).  Castle did not take an adverse employment action against plaintiff, as discussed below

20   (*see* page 17 *infra*), and therefore her claim fails as a matter of law.  Even if he did, Castle is

21   immune from liability.

22           "'California courts construe section 821.6 broadly in furtherance of its purpose to

23   protect public employees in the performance of their prosecutorial duties from the threat of

24

25       [10] One of plaintiff's cites to the statute is to section "121.6," but in context this is an
     obvious typographical error.  While plaintiff also suggests her claim is a "prior restraint claim"
26   (Pl.'s Opp'n to Castle at 19), this has no bearing on the court's immunity analysis.

harassment through civil suits.'" *Richardson-Tunnell v. Schools Ins. Program for Employees*, 157 Cal. App. 4th 1056, 1062 (2007) (quoting *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007)). "Investigations are considered to be part of judicial and administrative proceedings for purposes of section 821.6 immunity." *Id.* The issue raised here is whether Castle was acting within the scope of his employment. "Section 821.6 immunity applies only to conduct within the scope of employment. An employee is acting in the course and scope of his employment when he is engaged in work he was employed to perform, or when the act is incident to his duty and is performed for the benefit of his employer, not to serve his own purposes or convenience." *Id.* While "[s]cope of employment is ordinarily a question of fact for the jury, [] where only one reasonable inference can be made [the court] may decide the question as a matter of law." *Id.* at 1062-63. The initiation of an internal affairs investigation clearly falls within the purview of § 821.6. *See Wrigley v. Aquaviva*, 2010 U.S. Dist. LEXIS 120115, at *25 (E.D. Cal. Nov. 12, 2010). Here, assuming Castle initiated the internal affairs investigation, as plaintiff's supervisor, he was clearly acting within the scope of his employment. Even if Castle had some sort of ulterior motive, "[w]hether the investigatory duties were carried out negligently, maliciously, or without probable cause, they were within the scope of employment for purposes of section 821.6." *Richardson-Tunnell*, 157 Cal. App. 4th at 1063.

Although plaintiff does not specify on which investigation her claim against Castle rests, the court addresses the investigation surrounding the workers' compensation appeal as the investigation most likely relevant. Plaintiff's claim that Castle's involvement in the workers' compensation investigation chilled her speech fails as a matter of law. Plaintiff can only specify that Castle was present at her depositions; he did not initiate plaintiff's workers' compensation claim, nor did he conduct the depositions as part of plaintiff's workers' compensation claim. (ECF 47-2 ¶ 32; ECF 50 ¶ 32.) His presence is wholly insufficient to maintain such a claim; plaintiff has failed to raise an issue for trial. Plaintiff's counsel's contentions at the motion hearing, that plaintiff reviewed deposition testimony and provided

1  Devereux with input, do not save this insufficiency; in any event, plaintiff admitted this alleged

2  conduct was not extraordinary.  Moreover, plaintiff's counsel admitted, at hearing, that Castle's

3  involvement in the workers' compensation investigation was within his scope of employment

4  contending that the issue rather was his level of involvement.  As discussed, this argument fails

5  as a matter of law.

6                    iii.    Taking of property[11]

7         To state a claim for taking of property under 42 U.S.C. § 1983, plaintiff "'must

8  first establish that [she possessed] a constitutionally protected property interest.'" *San Diego*

9  *Police Officers' Ass'n. v. San Diego City Employees Retirement System*, 568 F.3d 725, 740 (9th

10  Cir. 2009) (quoting *McIntyre v. Bayer*, 339 F.3d 1097, 1099 (9th Cir. 2003)).  Plaintiff bases her

11  claim on her "[possession of] a property interest in her position of employment with [CHP]."

12  (Am. Compl. ¶ 103.)  She contends that Devereux and Castle "deprived Plaintiff of her chosen

13  profession in an effort to cover up their own personal criminal conduct."  (*Id.* ¶ 104.)

14         SCIF and Devereux maintain that plaintiff's claim fails because "(1) she had no

15  property interest in her specific position with DRS; (2) her transfer from DRS to Grants

16  Management within CHP was accomplished with due process; and (3) her decision to transfer

17  from Grants Management to CalSTRS was voluntary, not coerced."  (SCIF & Devereux's Mem.

18  at 13.)

19         Plaintiff disputes that she voluntarily chose to remain in Grants Management after

20  winning the right to return to DRS.  (*See* ECF 37-1 ¶ 100.)  But she avers, "[a]lthough Vierria

21  had a right to return to DRS, Devereux and Castle attempted to convince Vierria not to return to

22  DRS in a number of ways. . . . In addition, [Melissa Mathews] had already been hired by Castle

23  to take over Vierria [sic] former position at DRS."  (*Id.*)  In addition to the admission that she

24  _____

25         [11] The court dismissed this claim against Castle with prejudice and without leave to
       amend the complaint to allege a claim against Castle in his individual capacity on June 23, 2009.
26     (ECF 19 at 32.)

1   had a right to return, in her deposition plaintiff stated she "absolutely" could return to DRS if she

2   wanted to, even though Mathews had taken her caseload.  (Grajski Decl., Ex. A, Vierria Depo. at

3   177:15-24.)  Plaintiff has failed to establish an issue of material fact as to whether she could

4   return to DRS.

5            Plaintiff also cannot establish that she had a property interest in her position at

6   DRS as she has not pointed to facts from which a reasonable factfinder could conclude she was

7   constructively terminated.  Plaintiff contends that "it was SCIF, DEVEREUX and CASTLE'S

8   collective actions that forced her to resign from the CHP altogether [which] constitutes a

9   constructive termination."  (Pl.'s Opp'n at 18.)  This bare contention is not sufficient to defeat

10  summary judgment.  The Ninth Circuit has found constructive discharge where "'a reasonable

11  person in [the employee's] position would have felt that he was forced to quit because of

12  intolerable and discriminatory working conditions'" (*Knappenberger v. City of Phoenix*, 566

13  F.3d 936, 940 (9th Cir. 2009) (quoting *Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir.

14  2000))) and where it found "coercion inherent in the choice between retirement and a complete

15  deprivation of income" (*id.* (citing *Kalvinskas v. California Institute of Tech.*, 96 F.3d 1305,

16  1308 (9th Cir. 1996))), but not where "[a plaintiff] does not even allege that a termination would

17  have been inevitable."  *Id.* at 941.  In addition, the Ninth Circuit has found the analysis in *Altman*

18  *v. Hurst*, 734 F.2d 1240 (7th Cir. 1984) to be persuasive.  In that case, the Seventh Circuit

19  affirmed the district court's dismissal of a police sergeant's claim and "noted that, even if the

20  individual defendant's conduct had been intended to be disciplinary and amounted to the

21  sergeant's constructive demotion, no liberty or property interests were implicated."  *Steisberg*,

22  80 F.3d at 357 (citing *Altman*, 734 F.2d at 1242-43).

23           A reasonable factfinder could not find a constructive discharge in the present

24  case, where plaintiff's transfer "had no adverse effect on [] rank, pay, or privileges [in that]

25  merely transferring an employee without prior notice [does not give] rise to a due process

26  claim."  *Steisberg*, 80 F.3d at 356.  Plaintiff was at the same grade and receiving the same pay

1    and benefits at Grants Management as she did at DRS.  (ECF 36-2 ¶ 100; ECF 37-1 ¶ 100.)

2    Likewise, plaintiff's pay at CalSTRS is the same.  (Musante Decl., Ex. A, Vierria Depo. at

3    587:9-13.)  Even if plaintiff's commute was longer, she had to pay for parking, and she could not

4    receive overtime at Grants Management, such allegations are insufficient to support a claim for

5    constructive discharge.  (Grajski Decl., Ex. A, Vierria Depo. at 179:7-180:10.)  Furthermore,

6    plaintiff has admitted that she had a "very nice" boss at Grants Management but that she

7    transferred from CHP to CalSTRS because she did not like the work at Grants Management.

8    (ECF 36-2 ¶¶ 102, 103; ECF 37-1 ¶¶ 102, 103.)  Nowhere does plaintiff even allege that her

9    termination from CHP was "inevitable."  It was plaintiff's decision to remain with Grants

10   Management after having won her appeal and the right to return to DRS, and it was plaintiff's

11   decision to transfer to CalSTRS from Grants Management.  She remains a state employee at the

12   time of the filing and hearing of the instant motions.  (*See* Grajski Decl., Ex. A, Vierria Depo. at

13   177:15-18; 184:16-23; 181:13-182:4.)

14                    iv.    Abuse of Process

15                    "The common law tort of abuse of process arises when one uses the court's

16   process for a purpose other than that for which the process was designed. It has been 'interpreted

17   broadly to encompass the entire range of "procedures" incident to litigation.'"  *Rusheen v.*

18   *Cohen*, 37 Cal. 4th 1048, 1056-57 (2006) (quoting *Barquis v. Merchants Collection Assn.*, 7

19   Cal.3d 94, 104 n.4 (1972)) (internal citations omitted).  To prevail on a claim for abuse of

20   process, plaintiff "must establish that [defendants] (1) contemplated an ulterior motive in using

21   the process, and (2) committed a willful act in the use of the process not proper in the regular

22   conduct of the proceedings."  *Id.* at 1057.

23                    Plaintiff contends defendants "did not use the [Workers' Compensation Appeals

24   Process] to investigate [her] Workers' Compensation claim. Rather, Defendants misused [the

25   process] to intimidate Plaintiff and to find out the identity of the informant who blew the whistle

26   on the 'Chief's Disease' participants. Defendants further used this process to humiliate, harass

1   and retaliate against Plaintiff for being unwilling to participate [sic] their illegal conduct in

2   fraudulently stealing state funds." (Am. Compl. ¶ 116.)

3                              a.      SCIF & Devereux

4                  SCIF and Devereux maintain that the only "process" identified by plaintiff is her

5   deposition, during which Devereux "did nothing more than 'carry out the process to its

6   authorized conclusion.'" (SCIF & Devereux's Mem. at 15 (quoting *Templeton Feed & Grain v.*

7   *Ralston Purina Co.*, 69 Cal. 2d 461, 466 (1968)).)  Furthermore, SCIF and Devereux contend

8   that plaintiff's abuse of process claim is barred by California Civil Code § 47(b), as "Devereux's

9   deposing plaintiffs and others, obtaining sworn statements and retaining investigators were all

10  absolutely privileged communications." (*Id*. at 15-16.)  In addition, relying on plaintiff's

11  allegations in the amended complaint that Devereux acted in his official capacity and "at all

12  times" defendants were "acting within the scope [of] employment . . . " (Am. Compl. ¶¶ 8, 9),

13  SCIF and Devereux maintain that Devereux is immune from liability under California

14  Government Code § 821.6 because "Vierria's claims against [him] are based solely upon his

15  handling of her workers' compensation claim, and Vierria alleges he acted within the course of

16  his employment." (*Id*. at 16.)  This is a disingenuous argument as "scope of employment" in the

17  pleading context cannot be said to be a term of art as it is in the abuse of process context.

18                 Plaintiff maintains that the elements of abuse of process "cannot be determined as

19  a matter of law as they implicate factual issues of motive and credibility determinations reserved

20  for the fact finder." (Pl.'s Opp'n to SCIF & Devereux at 19.)  Plaintiff argues that the deposition

21  was used to obtain a collateral advantage and not legitimately executed, with the intent of forcing

22  plaintiff to agree not to return to DRS.  (*Id*. at 20-21.)

23                 Plaintiff fails to set forth any facts supporting her contention that Devereux had

24  any ulterior purpose in conducting the deposition.  Significantly, the actions upon which

25  plaintiff's claims rest occurred before the deposition:  plaintiff received the Notice of Adverse

26  Action approximately three weeks before Devereux began deposing her. (*See* Grajski Decl., Ex.

A, Vierria Depo. Ex. 3; *see* Vierria Decl., Ex. 16, ECF 39-16.)  In addition, Devereux's fiancée

was hired in 2008 (Devereux Decl. ¶ 15), after six of the seven days of plaintiff's deposition

were already complete.  (*See* Vierria Decl., Ex. 16, ECF 39 (showing the dates of the seven

depositions: September 27, 2007; October 4, 2007; October 11, 2007; October 17, 2007; October

22, 2007; December 21, 2007; and July 22, 2008).)  Plaintiff maintains that Castle's hiring of

Devereux's fiancée was a quid pro quo for Devereux and that Devereux was protecting his

fiancée's job; however, plaintiff provides no evidence to support this contention or that Castle

even knew that the employee was Devereux's fiancée.  (Pl.'s Opp'n to SCIF & Devereux at 21.)

Her speculations and assertions are insufficient to survive a motion for summary judgment.

Moreover, plaintiff's contention that her claim is supported by Devereux's purported attempts to

include her agreement not to return to DRS as part of a settlement agreement is not evidence and

fails as a matter of law.  *See Izzi v. Rellas*, 104 Cal. App. 3d 254, 265 (1980); *see also Abraham*

*v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 823 (1990).  Furthermore, plaintiff has

admitted that Devereux's questions regarding the leak to *The Sacramento Bee* were appropriate

(ECF 37-1 ¶ 90) – she cannot credibly contend elsewhere that such questions prove an ulterior

motive in his carrying out of the workers' compensation investigation.  (Am. Compl. ¶ 68.)  In

any case, "just taking the ordinary steps in connection with the taking, transcribing and filing of

the deposition cannot be abuse of process. . . . 'Some definite act or threat not authorized by the

process, or aimed at an objective not legitimate in the use of the process, is required; and there is

no liability where the defendant has done nothing more than carry out the process to its

authorized conclusion, even though with bad intentions.'"  *Thornton v. Rhoden*, 245 Cal. App.

2d 80, 100 (1966) (quoting Prosser on Torts (3d ed.) at 877).  Plaintiff has failed to set forth that

Devereux did anything other than carry out the process; she has only shown she was unhappy

with Devereux's manner and the subject matter of his questions.  (*See* ECF 37-1 ¶ 104.)  "[M]ere

vexation or harassment are not recognized as objectives sufficient to give rise to [this] tort."

*Younger v. Solomon*, 38 Cal. App. 3d 289, 297 (1974).  In addition, "there is no action for abuse

1   of process when the process is used for the purpose for which it is intended, but there is an

2   incidental motive of spite or an ulterior purpose of benefit to the defendant."  Restatement

3   (Second) Torts § 682, cmt. b.

4           Devereux's argument with respect to the role of investigators, that "hiring

5   investigators does not constitute 'process' because it is done without court involvement and does

6   not require court authority," is compelling, especially in light of plaintiff's utter failure to

7   counter this point.  (SCIF & Devereux's Mem. at 14 n.8.)  Likewise, plaintiff does not present

8   any evidence that incurring the cost of the Qualified Medical Examination or taking of sworn

9   statements for this purpose constitutes an abuse of process, or even that these steps are

10  inappropriate in such an investigation.  (Pl.'s Opp'n to SCIF & Devereux at 19.)

11          In any event, Devereux is immune to this claim.  California Civil Code § 47(b)

12  provides that "a privileged publication is one made . . . in any . . . official proceeding authorized

13  by law."  This "privilege . . . has been given broad application [and] it applies to any publication

14  required or permitted by law in the course of a judicial proceeding to achieve the objects of the

15  litigation, even though the publication is made outside the courtroom and no function of the

16  court or its officers is involved."  *Silberg v. Anderson*, 50 Cal. 3d 205, 211-12 (1990).  "[T]he

17  privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by

18  litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and

19  (4) that have some connection or logical relation to the action."  *Id*. at 212.  It "has been held to

20  immunize defendants from tort liability based on [the theory of] abuse of process."  *Id*. at 215.

21  This section also immunizes "statements . . . made in the context of a judicial proceeding, [that

22  are] logically related to the action, [play] an integral role in the proceeding, and were made by

23  one of the participants about an authorized participant."  *Id*. at 220.  The deposition was by any

24  standards a privileged publication used to achieve the objects of the proceeding.

25  /////

26  /////

1    Devereux is also immune under California Government Code § 821.6.  *See* pages

2   13-14 *supra*.  Devereux was inarguably acting within the scope of his employment in

3   representing CHP in plaintiff's workers' compensation appeal.

4                    b.    Castle

5           Castle contends he is entitled to summary judgment on plaintiff's abuse of

6   process claim because plaintiff failed to exhaust administrative remedies.  (Castle's Mem. at 15.)

7   In addition, he maintains that only one of plaintiff's deposition sessions occurred during the

8   claim period and "[p]laintiff has no evidence Castle did or said anything inappropriate at this

9   deposition."  (*Id*.)  Castle further contends that even if plaintiff's abuse of process claim is not

10   barred, "[p]laintiff does not attribute any specific conduct to Castle," nor can she "demonstrate

11   that Castle's presence at any deposition, or his testimony as a witness, constitute abuse of

12   process, as a result of which her claim fails.  (*Id*. at 17.)  In addition, Castle contends he is

13   immune from liability.  (*Id*. at 20.)

14           Plaintiff contends she specifically named Castle as an employee against whom her

15   government claim was filed and that she exhausted her administrative remedies.  (Pl.'s Opp'n to

16   Castle at 20, 21.)  Plaintiff further maintains that her allegations regarding Castle's conduct

17   before March 26, 2008 state continuing violations, because "the IA investigation, the adverse

18   action, and VIERRIA'S workers' compensation case were all part of an ongoing effort by

19   CASTLE and DEVEREUX to harass and intimidate VIERRIA so as to prevent exposure of their

20   wrongdoing, and to probe into whether VIERRIA . . . had leaked information to the *Sacramento*

21   *Bee* and therefore [are] not barred by the statute of limitations."  (*Id*. at 20-21.)  Plaintiff also

22   argues that Castle's contentions regarding the insufficiency of plaintiff's abuse of process claim

23   are based on disputed facts and she attributes specific conduct to Castle in alleging that he used

24   the workers' compensation appeals process, along with Devereux, "as a way to reopen the

25   investigation into whether VIERRIA was the leak to the Sacramento Bee, make sure that she did

26   not return to the DRS, and keep her from exposing their fraudulent activities."  (*Id*. at 21-22.)

1    The court need not reach all of Castle's arguments, because it finds plaintiff has

2 not pointed to any facts implicating Castle in this claim.  It is undisputed that Castle did not

3 initiate plaintiff's workers' compensation appeal, nor did he conduct the depositions as part of

4 plaintiff's workers' compensation claim.  (ECF 47-2 ¶ 32; ECF 50 ¶ 32.)  Plaintiff's position

5 regarding Castle's abuse of process centers around Devereux's deposition subjects and tactics

6 and decision to depose plaintiff over the course of seven days.  (*See* Pl.'s Opp'n to Castle at 22-

7 23.)  Plaintiff admits Castle was not disruptive during the depositions and she says only that

8 Castle reviewed her deposition transcripts to provide Devereux with input and guidance.  (*Id.* at

9 21.)  This is insufficient to maintain a claim for abuse of process; there is an utter dearth of

10 evidence that Castle used, much less misused, the power of the court, which is the "essence of

11 the tort."  *Stolz v. Wong Communications Ltd. Partnership*, 25 Cal. App. 4th 1811, 1822 (1994)

12 (internal quotation omitted).

13                    v.       Intentional Infliction of Emotional Distress

14    To state a claim for intentional infliction of emotional distress ("IIED"), plaintiff

15 must allege "(1) extreme and outrageous conduct by [defendants] with the intention of causing,

16 or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

17 severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

18 distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)

19 (quotations omitted).  "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed

20 all bounds of that usually tolerated in a civilized community' [and] the defendant's conduct must

21 be 'intended to inflict injury or engaged in with the realization that injury will result.'"  *Id.* at

22 1050-51 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).  Liability

23 "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

24 trivialities."  *Id.* at 1051 (quotation omitted).  However, "[b]ehavior may be considered

25 outrageous if a defendant (1) abuses a relation or position which gives him power to damage the

26 plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3)

1   acts intentionally or unreasonably with the recognition that the acts are likely to result in illness

2   through mental distress." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 155 n.7 (1987).

3          Plaintiff maintains that defendants "intentionally intimidated, ridiculed and

4   harassed Plaintiff by means of a sham investigation and spurious adverse actions."  (Am. Compl.

5   ¶ 120.)

6                  a.      SCIF & Devereux

7          SCIF and Devereux contend their conduct was not extreme or outrageous and the

8   IIED claim is barred by California Civil Code § 47(b) and the state's Workers' Compensation

9   Act.  (SCIF & Devereux's Mem. at 17.)  Plaintiff counters that Devereux's conduct was extreme

10  and outrageous and that the IIED claim is not barred by either statute.  (Pl.'s Opp'n to SCIF &

11  Devereux at 24-25.)

12         "[W]hen the employee's [IIED] claim is based on conduct normally occurring in

13  the workplace, it is within the exclusive jurisdiction of the Workers' Compensation Appeals

14  Board."  *Cole*, 43 Cal. 3d at 151; see also *Lockheed Martin, Corp. v. Workers' Comp. Appeals

15  Bd.*, 96 Cal. App. 4th 1237, 1247 (1st Dist. 2002).

16              In determining whether exclusivity bars a cause of action against
                an employer [], courts initially determine whether the alleged
17              injury falls within the scope of the exclusive remedy provisions.
                Where the alleged injury is "collateral to or derivative of" an
18              injury compensable by the exclusive remedies of the [Act], a cause
                of action predicated on that injury may be subject to the
19              exclusivity bar. [] Otherwise, the cause of action is not barred.

20              If the alleged injury falls within the scope of the exclusive remedy
                provisions, then courts consider whether the alleged acts or
21              motives that establish the elements of the cause of action fall
                outside the risks encompassed within the compensation bargain. []
22              Where the acts are "a 'normal' part of the employment
                relationship," [] or workers' compensation claims process [], or
23              where the motive behind these acts does not violate a
                "fundamental policy of this state" [], then the cause of action is
24              barred. If not, then it may go forward.

25  *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 811-12 (2001) (internal

26  citations omitted).

1    Plaintiff's claims against SCIF and Devereux are based on Devereux's conduct of

2  the workers' compensation investigation.  However, plaintiff has failed to point to any facts

3  supporting the conclusion that Devereux's acts were anything but "a normal part . . . of the

4  workers' compensation claims process."  *Haist*, 69 Cal. Comp. Cas at 942.  Therefore, SCIF and

5  Devereux are entitled to judgment in their favor as a matter of law.

6           b.      Castle

7    Castle contends he is entitled to summary judgment on plaintiff's IIED claim

8  because plaintiff failed to exhaust administrative remedies.  (Castle's Mem. at 15.)  Moreover, he

9  contends plaintiff "does not attribute any specific acts of malicious conduct to Castle . . . ."  (*Id.*

10  at 18.)  He also maintains that plaintiff's IIED claim is barred by the Workers' Compensation

11  Act.  (*Id.* at 19.)  In addition, Castle contends he is immune from liability for IIED.  (*Id.* at 20.)

12    Plaintiff maintains there is a triable issue of fact regarding her IIED claim against

13  Castle (Pl.'s Opp'n to Castle at 23), contending that Castle directed Devereux to subject plaintiff

14  to "sham investigations and seven (7) days of relentless deposition questioning" and that

15  Devereux hired three investigation firms on Castle's authority.  (*Id.* at 24.)  However, plaintiff

16  has failed to establish a triable issue of fact; plaintiff has nowhere even alleged that Castle had

17  any sort of authority over Devereux.

18    "[W]hen the misconduct attributed to the employer is actions which are a normal

19  part of the employment relationship, such as demotions, promotions, criticism of work practices,

20  and frictions in negotiations as to grievances, an employee suffering emotional distress causing

21  disability may not avoid the exclusive remedy provisions of the Labor Code . . . ."  *Cole*, 43 Cal.

22  3d at 160.  "The cases that have permitted recovery in tort for intentional misconduct causing

23  disability have involved conduct of an employer having a 'questionable' relationship to the

24  employment, an injury which did not occur while the employee was performing service

25  incidental to the employment and which would not be viewed as a risk of the employment, or

26  conduct where the employer or insurer stepped out of their proper roles."  *Id.* at 161.  Plaintiff's

1   claim is without merit as she has failed to cite to any specific misconduct by Castle.  The court

2   has found that Castle was acting within the scope of his employment in the internal affairs

3   investigation and that there are no genuine issues of material fact regarding his alleged

4   involvement in the workers' compensation appeal investigation; therefore, on the summary

5   judgment record now before the court, plaintiff's IIED claim is preempted by the Worker's

6   Compensation Act.

7           Castle also is immune from liability as provided by California Government Code

8   §§ 821.6 and 822.2, as discussed below.  Plaintiff's bare contentions that Castle was not acting in

9   the scope of his employment and that there is a question of fact for the jury (Pl.'s Opp'n to

10  Castle at 25) are insufficient to raise issues of material fact regarding Castle's immunity from

11  liability for the IIED claim.

12          Castle is immune under § 821.6, discussed previously, because he was acting

13  within the scope of his employment.  *See* pages 13-14 *supra*. Section 822.2 likewise states: "A

14  public employee acting in the scope of his employment is not liable for an injury caused by his

15  misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is

16  guilty of actual fraud, corruption or actual malice."  "Actual malice" means "'a conscious intent

17  to deceive, vex, annoy or harm the injured party in his business.'" *Golden W. Baseball Co. v.*

18  *Talley*, 232 Cal. App. 3d 1294, 1304 (1991) (quoting *Schonfeld v. City of Vallejo*, 50 Cal. App.

19  3d 401, 410 (1975)).  "Actual fraud" also requires "an intent to deceive or to induce action of

20  some sort." *Id*.  Castle is entitled to immunity because "he made an uncontradicted showing

21  that: (1) he was acting in the course of his employment; and (2) he was not guilty of actual fraud,

22  corruption, or actual malice."  *Id*. at 1304-05.  In the face of this standard, plaintiff states only

23  that there is a question of fact whether Castle was acting in the course of his employment, but

24  does not set forth specific facts that he was not.  (Pl.'s Opp'n to Castle at 25.)  Plaintiff has

25  wholly failed to establish that there is a genuine issue for trial on this claim as well.

26  /////

IV.     CONCLUSION

      For the foregoing reasons, the court GRANTS the motions for summary judgment filed by defendants SCIF, Devereux and Castle.  The court ORDERS this case CLOSED.

DATED:  July 19, 2011.

_____
UNITED STATES DISTRICT JUDGE